## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GOLO, LLC | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. _____ |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HIGHYA, LLC; BRIGHTREVIEWS, LLC; | : | |
| DMITRY OZIK; and VLADIMIR | : | |
| RAPPAPORT, | : | |
| | : | |
| Defendants. | : | |
| | : | |

### COMPLAINT

Plaintiff GOLO, LLC ("GOLO"), by and through its undersigned counsel, Pepper Hamilton LLP, hereby files this Complaint against Defendants HighYa, LLC ("HighYa"), BrightReviews, LLC ("BrightReviews"), Dmitry Ozik ("Ozik"), and Vladimir Rappaport ("Rappaport"), (collectively, "Defendants"), and in support thereof avers as follows:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and under the Lanham Act, 15 U.S.C. § 1121.

2.     This Court has personal jurisdiction over Defendants because Defendants transact business, contract to supply things, and/or cause harm and tortious injury in the Commonwealth of Pennsylvania. Defendants have purposefully availed themselves of the laws of Pennsylvania and engage in continuous and systematic conduct in Pennsylvania and this judicial district.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c).

1

## PARTIES

4.     GOLO is a corporation organized under the laws of the state of Delaware with a principal place of business located at 630 Churchmans Road, Suite 200, Newark, Delaware 19702.

5.     HighYa is a limited liability corporation organized under the laws of the state of Washington, with a principal place of business at 2620 Bellevue Way Northeast, #135, Bellevue, Washington 98004.

6.     BrightReviews is a limited liability corporation organized under the laws of the state of Washington, with a principal place of business at 2620 Bellevue Way Northeast, #135, Bellevue, Washington 98004.

7.     Ozik is an individual who resides in or around Seattle, Washington.

8.     Ozik is a "governor" of both HighYa and BrightReviews, as defined in Rev. Code Wa. 23.95.105(12).

9.     On information and belief, Rappaport is an individual who resides in or around Seattle, Washington.

10.    Rappaport is a "governor" of both HighYa and BrightReviews, as defined in Rev. Code Wa. 23.95.105(12).

## FACTUAL BACKGROUND

### GOLO, LLC

11.    GOLO  is a leading weight loss program created by a team of doctors and researchers which aids people all over the world in achieving their weight loss goals in a sustainable and healthy manner. (*See* www.golo.com.)

2

12.     GOLO is the owner of a series of registered trademarks that include the term "GOLO."

13.     GOLO was the top-searched diet on Google in 2016. (*See* https://www.google.com/trends/yis/2016/US?hl=en.)

14.     GOLO's 30-Day Rescue Plan promotes weight loss with a three-tier solution of dietary modification, regular exercise, and nutraceutical supplementation that helps dieters lose weight without drastically cutting calories and/or compromising their health. (*See* www.golo.com.)

15.     GOLO's program includes: (1) the Release supplement; (2) the Metabolic Fuel Matrix; and (3) behavioral changes. (*See id.*)   Members can expect to lose an average of 1-2 pounds per week. (*See id.*)

16.     The Release supplement contains a proprietary blend of ingredients that assists with the release of stored fat, and is intended to kick-start weight loss and support sustainable and lasting results. (*See id.*)

17.     The Metabolic Fuel Matrix employs a meal plan that utilizes food in correct portions and combinations to assist the body's conversion of food into energy rather than fat storage. (*See id.*)

18.     GOLO promotes behavioral changes in its users by providing the tools needed to succeed and reach weight loss goals and overcome emotional and stress eating. (*See id.*) These tools include simple strategies to strengthen each user's level of commitment and determination. (*See id.*)

19.     The GOLO 30-Day Rescue Plan Kit currently includes: the GOLO 30 Day Rescue Plan; Creating Matrix Meals; Truth & Change; the Release supplement; and a free

myGOLO.com membership. Members can choose additional bottles at the time of order or later via the myGOLO free membership site. Customers do not pay for shipping for their Rescue Plan Kit. (*See* https://golo.com/cart-shop/.)

20.    The myGOLO.com membership provides a support forum and allows members to communicate with GOLO support, as well as access recipes and meal plans.

21.    GOLO also provides a support group through Facebook, where customers can communicate and share their experiences. (*See* https://www.facebook.com/GOLO4life/; *see also* http://www.mygolo.com/login.aspx#/.)

22.    GOLO offers a sixty-day money back guarantee to its members.    (*See* www.golo.com/policies.)

23.     GOLO has earned rave reviews from its members, many of whom credit GOLO with being the catalyst for sustainable weight loss, long-lasting dietary changes, and overall improved health. (*See* https://golo.com/golo-reviews/.)    GOLO states on its website that the highlighted results may not be typical and each person's results may vary. (*See id.*)

24.    GOLO is endorsed, and even used by, multiple doctors, many of whom share their professional opinions of GOLO on GOLO's website. (*See* www.golo.com.)

25.    GOLO's website identifies "Team GOLO," which includes the program's developers, doctors, and executive management, among others. (*See* https://golo.com/how-golo-works.)

26.    GOLO conducted several trials between 2009 and 2014 in South Africa and the United States to determine the efficacy and safety of its three-tier solution. (*See id.*)    These studies demonstrated an average weight loss of 20.6 pounds within the first 90 days of the program, 37.4 pounds after 26 weeks, and 48.6 pounds after 1 year. (*See id.*)

4

27.     GOLO's products are sold exclusively through its website and customer service department; GOLO does not have traditional, brick-and-mortar stores, and it does not process orders by phone through a third-party call center.

28.     GOLO keeps careful track of the amount of web traffic its website receives; among other things, GOLO records and analyzes the number of unique visitors to its website, the amount of organic internet traffic its website receives (i.e., the number of visitors who arrive at the website by searching for the term "GOLO" on Google, Bing, or Yahoo, and not simply by typing GOLO's url address into their browser), and the percentage of visitors who "click through" and purchase GOLO's products and/or services from the website.

29.     GOLO drives traffic to its website through television, radio, print, and digital marketing.   On average, GOLO spends approximately $1.20 per visitor to its website on marketing efforts.

30.     Thus far in 2017, GOLO's website has received an average of roughly 300,000 visitors per month (including 793,000 visitors in May).  Of those visitors: approximately thirty percent (30%) have arrived organically (i.e., through a web search); and roughly four percent (4%) purchased one or more of GOLO's products, spending an average of $75.00.

31.     As reflected above, every visitor to GOLO's website (a "hit" or "click") represents real monetary value to GOLO.

### HighYa and BrightReviews

32.     HighYa and BrightReviews are related companies that each maintain so-called "review" websites created by Ozik, a Seattle-area web designer who – according to his LinkedIn profile – is "passionate about helping people avoid all kinds of scams and discover great products and services."

5

33.     On information and belief, Ozik and Rappaport are principally responsible for the content, design, funding, marketing, and day-to-day operations of the HighYa and BrightReviews websites.

34.     HighYa specifically defines itself as an "online community that's revolutionizing how consumers research products" and a place that allows readers to "[l]earn facts about companies and their products & services; [r]ead product reviews from real consumers just like you; [e]ducate yourself through our articles," and "avoid scams." (http://www.highya.com/about-highya.)

35.     On the same page, HighYa claims further that:

> We're the folks that hope to help provide you with factual editorial reviews compiled through publicly available information into a single article about many of the most popular products and services available today.  In other words, we try to help you cut through all the marketing hype by gathering information from a wide variety of sources, bringing it together ... and answering the ever-present question: Is this is a scam, or is it legit?

(*Id.*)

36.     Finally, HighYa also states that:

> ... we're ... a place where companies can talk with their customers. We understand that many business are legit, and are just trying to share their passion with the world (much like HighYa).  But sometimes they make mistakes, and we provide the perfect outlet for them to solve problems and better their products using feedback directly from their customers."

(*Id.*)

37.     HighYa's website contains purported reviews for products in many categories, including business, education and learning, entertainment, finance, health and beauty, home and garden, internet and marketing, products and services, software, technology, and travel and vacation.  (*See* http://www.highya.com/ at "Review Categories".)

6

38.     HighYa identifies the "goals" for "HighYa reviews" as follows: "To help people find trustworthy companies, software, products, and services; To provide readers with useful tips and to highlight important features; To report scams and other fraudulent activity; To build a community." (http://www.highya.com/about-highya/review-guidelines.)

39.     HighYa provides information about how to write a "great review," such as:

- Providing a personal experience / Telling your story

- Truthful accounts based on factual information

- Detail, detail, detail

- Written with the goal of providing helpful and relevant information

- Passion about the topic. (But please, refrain from profanity and hatefulness).

- Well-formatted. Lengthy reviews are good, but remember to use multiple paragraphs to improve readability.

- Free of spelling and grammatical errors

- Avoid bad habits such as writing in all caps and using excessive exclamation marks.

(*Id.*)

40.     HighYa identifies the following as components of a "poor review":

- Profanity, hate speech, threats, etc. These will not be tolerated.

- Plagiarism. Under no circumstances should reviews from other websites be copied.

- Self-promotion. Do not write reviews about your own business.

- Exaggeration, or 'stretching the truth.' Just stick to the facts.

- Companies or hired third parties posting as consumers to artificially boost their overall rating on HighYa

(*Id.*)

41.     Before posting a review, HighYa requires that a consumer click a "Post Your Review" button confirming that they are a "real customer who has used [the] product and/or service who is solely expressing real experience and interaction with no ulterior motives and not affiliated with the company in any way." (*Id.*)

42.     On information and belief, the "Post Your Review" button described in Paragraph 41 is the only way HighYa "verifies" a consumer review; HighYa does nothing else to confirm that the purported consumer is a "real customer," who purchased and used the product and/or service, and is not a GOLO competitor or other user with "ulterior motives" or an improper affiliation.

43.     HighYa only sometimes "removes reviews" from its website; however, a review may be removed if it does not comply with [HighYa's] guidelines." For example:

> [I]f [the review] is proven to be exaggerated or untrue, contains plagiarism, appears to be fake/spammy, and/or is not relevant to the topic . . . [or] if a consumer who at an earlier point left a negative review on HighYa was able to successfully resolve his or her issue and/or dispute afterwards with the company, and attempts to contact us in order to accurately update it, we will certainly be in favor of modifying accordingly . . . Finally, in certain instances, if we do discover at a later point that a certain review we've already published actually turns out to be non-genuine and non-truthful, we do reserve the right to remove it from our website."

(*Id.*)

44.     HighYa also claims to "review every single review and comment submitted to the website," and to "sometimes" "edit any reviews or comments before publishing," but states that HighYa "never ... change[s] ones [sic] opinion or nature of review." (*Id.*)

45.   HighYa "reserve[s] the right to not publish certain reviews and comments ... if they don't comply with [HighYa's] review guidelines." (*Id.*)

46.   More specifically, HighYa states that a review might not be published if the consumer has not "used and/or submitted purchase orders for" the products or services, if the reviews and comments are "irrelevant," or if the poster is merely "posing" as a consumer or hiring third parties to do so. (*Id.*)

47.   However, HighYa simultaneously maintains that comments "are the dialogue beneath each review on every product page" and states that HighYa does "not require that the commenters have [used] the product or service since the actual comment will not affect the overall rating of the current product." (*Id.*)

48.   If a negative review is posted about a company on the HighYa website, HighYa states that a company "can sign up for our business for HighYa profile which will give you the ability to receive instant alerts on any new reviews/comments that enter for your product/service. Next, you'll be able to respond as an official verified company rep and the user will be alerted. Through this method, you will have the opportunity to resolve/dispute any negative reviews the right way." (*Id.*)

49.   On information and belief, HighYa's "business for HighYa profile" is merely a ploy to create dialogue with the companies whose products are reviewed on HighYa's website, as well as a false perception that HighYa's reviews are legitimate or scientific.

50.   HighYa maintains multiple social media accounts, including Twitter, Facebook, and YouTube pages, and regularly posts links to its website from those pages, and its reviews of (among other things) diet and weight-loss related products and services. (*See, e.g.,* https://www.facebook.com/highyareviews/.)

9

51.     Finally, HighYa discloses on another of its website pages that it has:

> ... included advertisement units provided by Google AdSense and Media.net along with affiliate links to a product located at our Team Treehouse page, a product we personally have used ourselves and would recommend to the relevant individuals. If a visitor clicks on a link located at Team Treehouse, he/she then gets redirected outside of our page to the main company website and should they decide purchase [sic] an educational product, we will earn a commission. In addition, the only other product where HighYa earns a commission through affiliate sales is the Bowflex Max Trainer . . . Team Treehouse and Bowflex Max Trainer are the only two products where we earn a commission through affiliate sales . . . any advertisements you see on any URL during your visit at HighYa.com are not paid slots by third parties nor is it leased. They are solely either Google AdSense or Media.net (a network of Yahoo/Bing based ads) adverts.

(http://www.highya.com/affiliate-disclaimer.)

52.     Similarly, BrightReviews describes its website as a "small team of visionaries concerned for the well-being of [the website's] visitors"; the "As Seen on TV Reviews & Infomercial Scam Busterz," who will "switch on the (proverbial) light" for readers, and show them "what's good and what's a scam."   (http://www.brightreviews.com/about-brightreviews; *see also* http://www.brightreviews.com/.)

53.     BrightReviews claims that it is "not affiliated with any brand or product," does not "get a commission on any sales," is not "a front for any organization," and thus, that it "cut[s] to the chase and eliminate[s] all B.S." in its reviews of various "As Seen on TV" products.  (*Id.*; *see also* http://www.brightreviews.com/about-brightreviews.)

54.     Like HighYa, BrightReviews provides purported reviews of a wide range of products (including "beauty," "home & garden," "business & finance," "kitchenware," and "health & fitness").   In fact, BrightReviews states that "[a]ny product or service" can be reviewed on its website.

55.     Also like HighYa, BrightReviews solicits "reviews" from readers or users, and allows those readers or users to post their "reviews" at the bottom of larger, supposedly more comprehensive reviews of the product at issue.   Those larger reviews are authored by BrightReviews, and purportedly based on BrightReviews' review of "third party sources and publicly available information," but not on BrightReviews' actual use, testing, or analysis of the product. (*See* http://www.brightreviews.com/review-guidelines.)

56.     BrightReviews also allows readers or users to "rate" the products used on a scale of 1 to 5 "stars" (with 1 meaning a "really bad experience" and 5 meaning "Great Product! I recommend it!").

57.     BrightReviews provides many of the same "guidelines" that HighYa does for user-submitted comments or reviews, including that the user must "have used the product at some point or at least placed the order and have some kind of customer service, billing and/or shipping encounter," and claims that its "staff reviews every review that comes in ...using an undisclosed proprietary process to help validate the authenticity of the review." (*Id.*)

58.     On information and belief, the only way BrightReviews actually attempts to verify the authenticity of a user comment or review is by forcing the user to check a box (stating that he or she is "a real customer who used this product or service expressing my real experience and not an employee of this company") before posting his or her comment or review.

59.     On information and belief, BrightReviews does nothing else to verify that the purported consumer is a "real customer," who purchased and used the product and/or service, and is not a GOLO competitor or other user with "ulterior motives" or an improper affiliation.

11

60.     BrightReviews claims that it makes money only through advertisements on its website. (*Id.*)  BrightReviews explains further that it earns a certain "amount" each time a user clicks on the advertisements displayed on its website. (*Id.*)

61.     Like HighYa, BrightReviews maintains active Facebook, Twitter, Google+ and other social media accounts, which post links to the latest reviews on its website.

## The GOLO "Reviews"

62.     In or about March 2016, HighYa's website published an article which purported to describe and "review" the GOLO Program.  A true and correct copy of that article, as pulled from http://www.highya.com/golo-reviews, is attached hereto as Exhibit A.

63.     At the bottom of the article and "review," there were dozens of comments from purported users of the GOLO program.  (*See id.*)

64.     Those comments purport to show an "Average Customer Rating" of 2.8 (out of 5) stars.  (*Id.*)

65.     On information and belief, HighYa posted links to that "review" of the GOLO program on its social media sites, and, in so doing, published false, misleading, or defamatory headlines for or descriptions of the "review" to encourage readers or users to click on the links.

66.     For example, on April 27, 2016, HighYa posted the following to its Twitter account:     "Weight-loss  #scams  are  everywhere.     Is  GOLO  one  of  them?" (https://twitter.com/HighYaReviews/status/725389081656614912.)

67.     Beginning in July 2016, representatives from GOLO began corresponding with representatives from HighYa requesting that HighYa remedy the incorrect, false, and misleading information about GOLO on the HighYa website.

68.     These discussions continued over the course of several months as GOLO's representatives attempted to respond to the misleading and inaccurate comments left on the GOLO "review" page on the HighYa website.

69.     In January 2017, GOLO's representative, Eden Covington, informed HighYa and its representative, Derek Lakin, that the title of HighYa's GOLO "review" at the time – "GOLO Weight Loss Diet Reviews – Is it a Scam or Legit?" – was misleading, and requested that HighYa changed the title to: "GOLO Weight Loss Diet Reviews – Does it really work?" (Ex. B, hereto.)

70.     During the January 31, 2017 correspondence, Ms. Covington also informed HighYa that the information contained in HighYa's "review" was based on a very "old version of [the GOLO] site," and that much of the information contained therein was consequently incorrect. (*Id.*)

71.     For example, HighYa's "review" identified the focus of GOLO's program was combatting "insulin resistance." (*Id.*) While GOLO identifies the importance of insulin, the program does not and never has focused on "insulin resistance."

72.     Having received no response, Ms. Covington emailed HighYa's representatives again on February 14, 2017, seeking to have the incorrect information concerning GOLO addressed. (*See id.*)

73.     HighYa did not respond to Ms. Covington's January 31 and February 14 emails until February 16, 2017. (*See id.*)

74.     Between February 16, 2017 and February 28, 2017, Ms. Covington and the representative from HighYa (Mr. Lakin), spoke on the telephone on two separate occasions

13

concerning proposed changes to the incorrect information related to GOLO on the HighYa website.

75.     The HighYa "review" of GOLO, however, was not substantially changed in response to the above-described communications.

76.     However, after multiple discussions and communications between outside counsel, HighYa agreed to, and did in fact, remove the false and offending portions of the article and review from its website and social media platforms.

77.     Nonetheless, the preceding versions of HighYa's GOLO review were posted to its website for months.

78.     Upon information and belief, no one at HighYa, including the individual who authored the "review" of GOLO, ever purchased or used the GOLO product.

79.     In or about January 2017, BrightReviews also posted a lengthy "review" of GOLO.  A true and correct copy of that "review," as originally published to and subsequently removed from http://www.brightreviews.com/golo-weight-loss-diet-reviews#write-a-review, is attached hereto as Exhibit C.

80.     As with the HighYa GOLO "Review," there were a series of user comments at the bottom of the BrightReviews GOLO "Review," which collectively gave GOLO a rating of 2 out of 5 stars.   Three of the four purported users gave highly negative reviews; one even claimed that he "tried Golo" and "instead of losing weight, [he] gained 30 lbs, and [his] blood sugar number went up 25 points."  (*Id.*)

81.     As with the original HighYa GOLO "Review," the BrightReviews GOLO Review was replete with inaccuracies, misleading statements, and blatant falsehoods.

82.     For example, the BrightReviews GOLO Review falsely stated that:

14

- "The 2010 study [was] performed with diabetics, not otherwise healthy individuals looking optimize insulin ... [T]his seems to be their target market";

- "None of [GOLO's] studies appear to be peer reviewed for accuracy ..."; and

- "[W]e didn't encounter any clinical evidence on leading medical websites ... that directly linked insulin management ... and weight loss."

(*Id.*)

83.     On information and belief, BrightReviews posted links to its GOLO "review" on its social media sites, and, in so doing, published false, misleading, or defamatory headlines for or descriptions of the "review" to encourage readers or users to click on the links.

84.     On or about June 7, 2017, BrightReviews took its GOLO "Review" down from its website. The above-copied link to that review now takes the user to a page that simply says "Whoops ... Page not found ... Try checking the url for errors or use our awesome site search below." Now, when a user searches BrightReviews' website for the term "GOLO," there are no results.

85.     On information and belief, neither HighYa nor BrightReviews are actually independent review websites, but mechanisms by which Ozik, Rappaport, and the website's other owners and operators promote products, receive advertising revenue, and generate income through website hits, clicks, and/or traffic.

## Defendants' Diversion of Organic Internet Traffic from GOLO

86.     On information and belief, HighYa and BrightReviews work or have worked together to redirect GOLO's potential and existing customers to their respective websites through various search engine optimization techniques ("SEOs"), including the use of Google's AdSense and/or AdWords programs, or similar Bing and/or Yahoo programs.

15

87.     On information and belief, HighYa and BrightReviews purchase online advertisements through Google's AdSense and/or AdWords programs, or similar Bing and/or Yahoo programs, including advertisements that are based upon, or incorporate, the trademarked term "GOLO," which accordingly manipulate the user's search results in Google.

88.     As a result of these advertisement purchases and other SEOs, when a user searches Google, Bing, or Yahoo for "GOLO," HighYa and BrightReviews' reviews of GOLO (and the negative "star ratings" each website provides or provided for GOLO) appear (or did appear) with the corresponding URL address on the first page of search results.

89.     On information and belief, HighYa and BrightReviews' use of the above-described SEOs has redirected and/or continues to redirect potential and existing GOLO customers to their respective websites, and to the products, programs, and plans those websites review more positively, link to, and/or promote, and has resulted in GOLO's loss of substantial revenue and goodwill.

90.     On information and belief, HighYa and BrightReviews receive or have received significant financial benefits from their use of the above-described SEOs, and the resulting redirection of potential and existing GOLO customers to their respective websites, including, but not limited to, additional advertisement revenue generated from or by those users' visits to HighYa and BrightReviews' websites.

## COUNT I
## UNFAIR COMPETITION AND FALSE ADVERTISING UNDER THE LANHAM ACT, 15 U.S.C. § 1125 *et seq.*, AS TO THE GOLO REVIEWS

91.     GOLO incorporates the preceding paragraphs as though fully set forth herein.

92.     Defendants are in competition with GOLO for internet traffic and/or website clicks or hits.

93.     Defendants' incorrect and misleading "reviews" concerning the GOLO program, as well as their publication of unverified "consumer reviews" and comments, constitute unfair competition and/or false advertising.

94.     In publishing the above-described GOLO reviews, Defendants are making, or did make, false and misleading statements about GOLO's product, including but not limited to those statements detailed herein.

95.     Defendants' false and misleading statements are or were material, in that they are or were likely to influence customers' purchasing decisions.

96.     Defendants' acts constitute, or did constitute, willful, deliberate, false, and misleading representations of fact as to the nature and characteristics of GOLO's services, in violation of 15 U.S.C. § 1125(a)(1)(B), because Defendants' false and misleading "reviews" are or were intended to divert organic internet traffic from GOLO to Defendants' websites. These false and misleading statements constitute, or did constitute, false advertising and promotion.

97.     GOLO has been and will continue to be injured as a result of Defendants' false statements, either by direct diversion of its internet traffic and sales, the costs to GOLO for corrective advertising to counteract Defendants' misrepresentations, or by a lessening of the goodwill associated with GOLO's goods and services.

98.     As a direct and proximate result of Defendants' Unfair Competition and False Advertising, GOLO has suffered and will continue to suffer monetary damages and irreparable harm.

99.     GOLO is entitled to relief pursuant to 15 U.S.C. § 1125.

## COUNT II
## UNFAIR COMPETITION AND FALSE ADVERTISING UNDER THE LANHAM ACT, 15 U.S.C. § 1125 *et seq.*, AS TO INTERNET TRAFFIC DIVERSION

100.   GOLO incorporates the preceding paragraphs as though fully set forth herein

101.   Defendants are in competition with GOLO for internet traffic and/or website clicks or hits.

102.   Defendants' diversion of GOLO's organic internet traffic and business from GOLO to their "reviews" of GOLO, also constitutes unfair competition and/or false advertising.

103.   By using GOLO's mark in various advertisements and other SEOs to promote and attract consumers to their websites, and, specifically, to the false, misleading GOLO reviews, and the other products, programs, and plans more favorably reviewed, promoted, and/or advertised on their websites, Defendants have and continue to make material statements that are or were likely to influence customers' purchasing decisions

104.   GOLO has been and will continue to be injured as a result of Defendants' above-described tactics and conduct, either by the costs to GOLO for corrective advertising to counteract Defendants' tactics and conduct, by a lessening of the goodwill associated with GOLO's goods and services, or by decreased traffic to GOLO's website and resulting purchasing of GOLO's goods and services.

105.   As a direct and proximate result of Defendants' Unfair Competition and False Advertising, GOLO has suffered and will continue to suffer monetary damages and irreparable harm.

106.   GOLO is entitled to relief pursuant to 15 U.S.C. § 1125

## COUNT III
## TRADE LIBEL
## PENNSYLVANIA COMMON LAW

107.    GOLO incorporates the preceding paragraphs as if fully set forth herein.

108.    The above-mentioned statements were published by Defendants on the HighYa and BrightReviews websites, as described above.

109.    The above-mentioned statements were false and defamatory.

110.    At the time they published the above-mentioned statements, Defendants knew that the statements concerning GOLO were totally false or, if not, Defendants' avoidance of the truth was in utter and reckless disregard of their truth or falsity.

111.    Defendants' false and defamatory statements have severely injured GOLO, in that they have tended to blacken and besmirch GOLO's reputation.

112.    Each of the aforementioned defamatory statements was understood by third parties to pertain to, and did defame, GOLO.

113.    Defendants' defamatory publication was so outrageous and malicious as to warrant the imposition of punitive damages.

114.    As a proximate result of Defendants' malicious, intentional, and reckless conduct as set forth above, GOLO is entitled to such damages as will compensate it for the injury to its professional reputation, as well as punitive damages to punish Defendants for their conduct and deter them and others similarly situated for like acts in the future.

## COUNT IV
## UNFAIR COMPETITION
## PENNSYLVANIA COMMON LAW

115.    GOLO incorporates the preceding paragraphs as if fully set forth herein.

116.    Defendants are in competition with GOLO for internet traffic and/or website clicks or hits.

117.    Defendants' incorrect and misleading "reviews" concerning the GOLO program, their publication of unverified "consumer reviews" and comments, and diversion of organic internet traffic, constitute unfair competition under Pennsylvania common law.

118.    Defendants' false and/or misleading descriptions of their websites as independent and/or informational review websites also constitute unfair competition under Pennsylvania common law.

119.    More specifically, Defendants' false and/or misleading descriptions of their websites, and misuse of the GOLO name and trademarks in their incorrect and misleading "reviews" of the GOLO program, their online advertising, and their other SEOs, amount to:

   a.    false description and/or designation of origin with respect to both GOLO and the Defendants' websites and "reviews";

   b.    deceptive marketing to GOLO's commercial detriment; and/or

   c.    an unfair method of competition for internet traffic and/or website clicks or hits.

120.    GOLO has more than a reasonable basis to believe that, as a direct and proximate result of Defendants' unfair competition, GOLO has been injured.

## PRAYER FOR RELIEF

WHEREFORE, GOLO prays for a judgment in its favor and against Defendants on the claims set forth above and requests that this Court award GOLO compensatory and punitive damages, attorneys' fees and costs, and such other and further relief as this Court may deem just and equitable under the circumstances.

M. Kelly Tillery, PA Attorney I.D. 30380
Attorney for Plaintiff, GOLO, LLC
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4401

Dated:  June 16, 2017

EXHIBIT "A"