**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| GOLO, LLC | **:** Civil Action |
| | **:** |
| Plaintiff, | **:** No. 2:17-cv-02714-GAM |
| | **:** |
| v. | **:** |
| | **:** |
| HIGHYA, LLC; and BRIGHTREVIEWS, LLC, | **:** |
| | **:** |
| Defendants. | **:** |
| | **:** |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

LEVINE SULLIVAN KOCH & SCHULZ, LLP

Paul Safier (No. 209154)
1760 Market Street, Suite 1001
Philadelphia, Pennsylvania 19103
Tel: (215) 988-9774
Fax: (215) 988-9750

*Attorneys for Defendants HighYa, LLC and
BrightReviews, LLC*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

FACTUAL BACKGROUND ................................................................................ 2

      A.    The Parties ................................................................................. 2

      B.    The GOLO Reviews ................................................................. 5

      C.    GOLO's Allegations About Defendants' Business Practices .................... 7

STANDARD OF REVIEW .................................................................................. 9

ARGUMENT ....................................................................................................... 10

I.      GOLO'S LANHAM ACT CLAIMS (COUNTS I AND II) FAIL AS A
MATTER OF LAW FOR MULTIPLE REASONS ................................... 10

      A.    Commercial Speech ................................................................ 11

      B.    Direct Commercial Injury ....................................................... 14

      C.    Falsity ..................................................................................... 18

      D.    Consumer Confusion .............................................................. 21

II.     GOLO'S COMMON LAW UNFAIR COMPETITION CLAIM (COUNT IV)
FAILS AS A MATTER OF LAW FOR THE SAME REASONS AS ITS
LANHAM ACT CLAIMS FAIL ............................................................... 25

III.    GOLO'S COMMON LAW TRADE LIBEL CLAIM (COUNT III) FAILS
AS A MATTER OF LAW FOR MULTIPLE REASONS ......................... 25

      A.    The HighYa Review ................................................................ 25

      B.    The User Comments ................................................................ 26

      C.    The BrightReviews Review ..................................................... 27

            1.    Falsity ............................................................... 28

            2.    Actual Malice .................................................... 28

            3.    Pecuniary Loss ................................................. 30

CONCLUSION ................................................................................................... 31

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahmed v. Hosting.com,*
   28 F. Supp. 3d 82, 91 (D. Mass. 2014) ..................................................................16

*Amerigas Propane, L.P. v. Opinion Corp.,*
   2012 WL 2327788 (E.D. Pa. June 19, 2012) .........................................................25

*Ascentive, LLC v. Opinion Corp.,*
   842 F. Supp. 2d 450 (E.D.N.Y. 2011) ...................................................................24

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).........................................................................9, 10, 14, 17

*AT&T Co. v. Winback & Conserve Program, Inc.,*
   42 F.3d 1421 (3d Cir. 1994).................................................................................21

*Avalos v. IAC/Interactivecorp.,*
   2014 WL 5493242 (S.D.N.Y. Oct. 30, 2014) .......................................................16

*Baker v. DeShong,*
   90 F. Supp. 3d 659, 663 (N.D. Tex. 2014) ...........................................................23

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)......................................................................................9, 10

*Black Diamond Land Management LLC v. Twin Pines Coal Inc.,*
   --- Fed. App'x ----, 2017 WL 3635178 (11th Cir. Aug. 24, 2017) ........................16

*Blank v. Optimum Financial Services, LLC,*
   2017 WL 1508990 (E.D. Pa. Apr. 27, 2017) .........................................................31

*Brooks Power Systems, Inc. v. Ziff Communications, Inc.,*
   1994 WL 444725 (E.D. Pa. Aug. 17, 1994) ..........................................................27

*Brunson Communications, Inc. v. Arbitron, Inc.,*
   266 F. Supp. 2d 377 (E.D. Pa. 2003) ....................................................................30

*Checker CAB Philadelphia, Inc. v. Uber Technologies, Inc.,*
   2016 WL 950934 (E.D. Pa. Mar. 7, 2016)................................................18, 19, 25

*Cintas Corp. v. Unite Here,*
   601 F. Supp. 2d 571 (S.D.N.Y. 2009).....................................................................23

*Cronin v. Bergmann*,
   2014 WL 5285930 (E.D. Pa. Oct. 16, 2014)......................................................11

*Design Resources, Inc. v. Leather Industries of America*,
   789 F.3d 495 (4th Cir. 2015) .........................................................................20

*Dimeo v. Max*,
   433 F. Supp. 2d 523 (E.D. Pa. 2006) ............................................................27

*Ditri v. Coldwell Banker Residential Affiliates, Inc.*,
   954 F.2d 869 (3d Cir. 1992)...........................................................................18

*Earley v. Gatehouse Media Pennsylvania Holdings, Inc.*,
   2015 WL 1163787 (M.D. Pa. Mar. 13, 2015)................................................28

*Facenda v. N.F.L. Films, Inc.*,
   542 F.3d 1007 (3d Cir. 2008)...................................................................12, 22

*Farah v. Esquire Magazine*,
   736 F.3d 528 (D.C. Cir. 2013) ...................................................................11, 13

*Forum Publications, Inc. v. P.T. Publishers, Inc.*,
   700 F. Supp. 236 (E.D. Pa. 1988) .................................................................30

*Green v. America Online (AOL)*,
   318 F.3d 465 (3d Cir. 2003)...........................................................................27

*Harte-Hanks Communications, Inc. v. Connaughton*,
   491 U.S. 657 (1989).......................................................................................29

*J.G. Wentworth v. Settlement Funding LLC*,
   2007 WL 30115 (E.D. Pa. Jan. 4, 2007) ...................................................23, 24

*Jankovic v. International Crisis Group*,
   822 F.3d 576 (D.C. Cir. 2016) .......................................................................30

*Johnson & Johnson-Merck Consumer Pharmaceuticals Co. v. Rhone-Poulenc
   Rorer Pharmaceuticals, Inc.*,
   19 F.3d 125 (3d Cir. 1994)..............................................................................18

*Kappe Associates, Inc. v. Chesapeake Environmental Equipment, LLC*,
   2016 WL 1257665 (E.D. Pa. Mar. 31, 2016)................................................26

*Keel v. Axelrod*,
   148 F. Supp. 3d 411, 423 (E.D. Pa. 2015) ....................................................13

*Lexmark International, Inc. v. Static Control Components, Inc.*,
   134 S. Ct. 1377 (2014)..............................................................10, 14, 15, 17

*Libman Co. v. Vining Industries, Inc.*,
 69 F.3d 1360 (7th Cir. 1995) ................................................22

*Lucent Information Management, Inc. v. Lucent Technologies, Inc.*,
 5 F. Supp. 2d 238 (D. Del. 1998)...........................................28

*Mallory v. S&S Publishers*,
 168 F. Supp. 3d 760, 775 (E.D. Pa. 2016) .....................30, 31

*MCW, Inc. v. BadBusinessBureu.com, LLC*,
 2004 WL 833595 (N.D. Tex. Apr. 19, 2004) ........................23

*Network Automation, Inc. v. Advanced Systems Concepts, Inc.*,
 638 F.3d 1137 (9th Cir. 2011) ................................................8

*New.Net, Inc. v. Lavasoft*,
 356 F. Supp. 2d 1090 (C.D. Cal. 2004) .................................13

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer
 Pharmaceuticals Co.*,
 290 F.3d 578 (3d Cir. 2002)...................................................19

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
 720 F.3d 490 (2d Cir. 2013)...................................................21

*In re Orthopedic Bone Screw Products Liability Litigation*,
 193 F.3d 781 (3d Cir. 1999)...................................................12

*Parker v. Google, Inc.*,
 242 F. App'x 833 (3d Cir. 2007) ...........................................21

*Parker v. Google, Inc.*,
 422 F. Supp. 2d 492 (E.D. Pa. 2006) ....................................22

*In re Philadelphia Newspapers, LLC*,
 690 F.3d 161 (3d Cir. 2012)...................................................26

*Pro Golf Manufacturing, Inc. v. Tribune Review Newspaper Co.*,
 809 A.2d 243 (Pa. 2002) ........................................................26

*Promotions, LLC v. Wright Bros., Inc.*,
 2017 WL 1838943 (S.D. Cal. May 8, 2017).........................16

*R.J. Ants, Inc. v. Marinelli Enterprises, LLC*,
 771 F. Supp. 2d 475 (E.D. Pa. 2011) ....................................25

*Radiance Foundation, Inc. v. NAACP*,
 786 F.3d 316 (4th Cir. 2015) ........................................11, 23

*Reese v. Pook & Pook, LLC,*
    158 F. Supp. 3d 271, 287-88 (E.D. Pa. 2016)............................................................16, 28, 30

*Robert Bosch LLC v. Pylon Manufacturing Corp.,*
    632 F. Supp. 2d 362 (D. Del. 2009)....................................................................................18

*SaleHoo Group, Ltd. v. ABC Co.,*
    722 F. Supp. 2d 1210 (W.D. Wash. 2010)..........................................................................23

*Schatz v. Republican State Leadership Committee,*
    669 F.3d 50 (1st Cir. 2012).................................................................................................28

*Swift Bros. v. Swift & Sons, Inc.,*
    921 F. Supp. 267 (E.D. Pa. 1995).......................................................................................30

*Taha v. Bucks County,*
    2015 WL 9489586 (E.D. Pa. Dec. 30, 2015)......................................................................29

*Tempur-Pedic North America, LLC v. Mattress Firm, Inc.,*
    2017 WL 2957912 (S.D. Tex. July 11, 2017)......................................................................24

*Testing Systems, Inc. v. Magnaflux Corp.,*
    251 F. Supp. 290 (E.D. Pa. 1966).......................................................................................30

*Tobinick v. Novella,*
    848 F.3d 935 (11th Cir. 2017) ...........................................................................................13

*Tucker v. Fischbein,*
    237 F.3d 275 (3d Cir. 2001)................................................................................................29

*UHS of Delaware, Inc. v. United Health Services, Inc.,*
    227 F. Supp. 3d 381, 403 (M.D. Pa. 2016) ........................................................................15

*Valley Forge Military Academy Foundation v. Valley Forge Old Guard, Inc.,*
    24 F. Supp. 3d 451, 456 (E.D. Pa. 2014) ...........................................................................11

*Wall & Associates, Inc. v. Better Business Bureau of Central Virginia, Inc.,*
    685 F. App'x 277 (4th Cir. 2017) .................................................................................15, 16

*Wojnarowicz v. American Family Association,*
    745 F. Supp. 130 (S.D.N.Y. 1990) .....................................................................................11

*XYZ Two Way Radio Service, Inc. v. Uber Technologies, Inc.,*
    214 F.Supp.3d 179, 186 (E.D.N.Y. 2016) ..........................................................................20

*Zeran v. American Online, Inc.,*
    129 F.3d 327 (4th Cir. 1997) .............................................................................................27

*Zerpol Corp. v. DMP Corp.*,
    561 F. Supp. 404 (E.D. Pa. 1983) ........................................................................................30

**Statutes**

15 U.S.C. § 1125 ...........................................................................................................................10

47 U.S.C. § 230 .............................................................................................................................26

42 Pa. Cons. Stat. § 5523(1) .......................................................................................................26

**Other Authorities**

Federal Rule of Civil Procedure 12 ........................................................................................2

## PRELIMINARY STATEMENT

In this case, GOLO, LLC – a marketer of a diet program, along with an associated supplement – has sued HighYa, LLC and BrightReviews, LLC (collectively, "Defendants"), two companies that own and operate websites that offer reviews of consumer products and services. GOLO has asserted claims under the Lanham Act, for common law unfair competition, and for trade libel, even though – as GOLO acknowledges – Defendants' only purported "competition" consists of publishing reviews of GOLO's diet and supplement, and attempting, like any internet publisher, to garner web traffic to those reviews.  Defendants moved to dismiss GOLO's Complaint ("Compl."), and, in response, GOLO filed an Amended Complaint ("Am. Compl."). Although the Amended Complaint contains some new factual allegations, at bottom, it suffers from the same fundamental defect that afflicted GOLO's original Complaint – GOLO is attempting to use laws designed to protect against unfair competition as a tool for suppressing speech about it that it does not like.  The law does not permit that.

The Amended Complaint should be dismissed in its entirety for the following reasons:

1. the Lanham Act claims fail as a matter of law because (a) the Lanham Act does not reach non-commercial speech such as the kind engaged in by Defendants, and (b) GOLO has failed to adequately allege (i) a direct injury suffered as a consequence of Defendants' conduct, (ii) that Defendants made false statements about GOLO's products or services, or (iii) that Defendants' use of GOLO's mark in connection with their reviews is likely to cause consumer confusion;

2. the unfair competition claim fails as a matter of law for the same reasons the Lanham Act claims fail; and

3.  the trade libel claim fails as a matter of law because all of the statements GOLO is

challenging (a) were published outside of the statute of limitations, (b) are

immune from liability under Section 230 of the Communications Decency Act,

and/or (c) have not been adequately alleged to be false, to have been published

with fault, or to have caused pecuniary loss.

Accordingly, Defendants respectfully request that this Court dismiss the Amended Complaint

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon

which relief can be granted.

## FACTUAL BACKGROUND[1]

### A.    The Parties

GOLO is a Delaware corporation, whose principal place of business is also in that state.

Am. Compl. ¶ 4, Sept. 11, 2017, Dkt. 14.  According to the Amended Complaint, GOLO markets

a "leading weight loss and wellness program," which includes, *inter alia*, a meal plan and a

"Release supplement."  *Id.* ¶¶ 7, 11-13, 15.  GOLO alleges that its supplement "contains a

proprietary blend of ingredients that work in conjunction with [the meal plan] to help manage

glucose, insulin, and stress, in order to promote steady and sustainable weight loss and minimize

or eliminate muscle loss during the weight loss regiment."  *Id.* ¶ 12; *see also* www.golo.com

(website for GOLO, which is cited at Am. Compl. ¶¶ 7, 18, 20, indicating that GOLO's diet

program focuses principally on "insulin management").  GOLO contends that "GOLO's products

are sold exclusively through its website and customer service department," and that "every

---

[1] Many of the allegations asserted in the Amended Complaint are outright false, or, at the very least, misleadingly incomplete.  Nonetheless, for purposes of this motion only, Defendants accept those allegations as true, at least to the extent that they are well pleaded.

2

visitor to GOLO's website . . . represents real monetary value to GOLO."  Am. Compl. ¶¶ 22, 26.

Defendants own and operate two consumer review websites.  *Id.* ¶¶ 27, 28, 31, 46, 48. HighYa, which owns and operates www.highya.com, is a limited liability company organized under the laws of Washington with its principal place of business in that state.  *Id.* ¶ 5. BrightReviews, which owns and operates www.brightreviews.com, is likewise a limited liability company organized under the laws of Washington with its principal place of business in that state.  *Id.* ¶ 6.  Both websites offer two kinds of reviews of consumer products and services: (i) editorial reviews, which are authored by Defendants, and (ii) reviews submitted by third-party commenters who have used the products and services at issue, and whose reviews are posted underneath the editorial reviews.  *Id.* ¶¶ 28, 29, 31, 35, 48, 49.  The HighYa website explains to its readers that it is "a place that allows [them] to '[l]earn facts about companies and their products & services; [r]ead product reviews from real customers just like you; [e]ducate yourself through our articles,' and 'avoid scams.'"  *Id.* ¶ 28 (quoting www.highya.com/about-highya). The website further explains that it "tr[ies] to help you cut through all the marketing hype by gathering information from a wide variety of sources, bringing it together . . . and answering the ever-present question: Is this a scam, or is it legit?"  *Id.* ¶ 29 (quoting www.highya.com/about-highya).  The BrightReviews website contains similar language.  *See id.* ¶¶ 46-47 (quoting www.brightreviews.com and www.brightreviews.com/about-brightreviews).

The HighYa and BrightReviews websites inform their readers that reviews authored by Defendants are principally "compiled through publicly available information," and are not necessarily based on Defendants' own use or testing of the products or services being reviewed. *Id.* ¶¶ 29, 49 (quoting www.highya.com/about-highya and www.brightreviews.com/review-

guidelines").  For the reviews submitted by users, the websites require that anyone posting a review confirm that he or she is a "real customer who has used [the] product and/or service who is solely expressing real experience and interaction with no ulterior motives . . . ."  *Id.* ¶¶ 35, 51, 52 (quoting www.highya.com/about-highya/review-guidelines and www.brightreviews.com/review-guidelines).  The websites inform readers that HighYa and BrightReviews review all user-generated comments and reviews, and reserve the right to not post, take down, or edit a review if it does not adhere to the sites' guidelines.  *Id.* ¶¶ 37-39, 51 (quoting www.highya.com/about-highya/review-guidelines and www.brightreviews.com/review-guidelines); *see also id.* (describing guidelines).  Lastly, HighYa permits companies that have been subject to reviews to sign up for a service that allows them to get alerts whenever a review or comment about their product or service is posted, and to engage directly with commenters in the comment section.  *Id.* ¶ 42.  As indicated in Exhibit A to the Amended Complaint, GOLO participates in that program.  *See id.* Ex. A at 5-20 (shaded responses to user comments at bottom of HighYa's review of GOLO, which are from GOLO).  Although GOLO alleges that this program "is merely a ploy to create dialogue with the companies whose products are 'reviewed,'" *id.* ¶ 43, GOLO does not allege – and cannot, as a participant in the program, allege in good faith – that HighYa charges these companies for the opportunity to participate in this program.

Neither HighYa nor BrightReviews sells any products or services via its website.  The HighYa website discloses that it generates income exclusively from two sources: (i) online advertisements "provided by Google AdSense and Media.net," and (ii) an affiliation with Bowflex Max Trainer, an exercise product that is advertised on a page separate from Highya's product reviews, and for which HighYa receives commissions on all sales that originate from

that page.  *Id.* ¶ 45 (quoting www.highya.com/advertiser-disclosure); *see also*

www.highya.com/advertiser-disclosure  (explaining relationship with Bowflex).  The

BrightReviews website discloses that "it makes money only through advertisements on its

website," where it "earns a certain 'amount' each time a user clicks on the advertisement

displayed on its website."  *Id.* ¶ 54.

**B.**     **The GOLO Reviews**

GOLO appears to complain about three publications, or types of publications, published

by Defendants.  First, GOLO complains about a review published on the HighYa website in

March 2016.  *Id.* ¶ 68; *id.* Ex. A.  GOLO asserts that, in January 2017, it informed Defendants

that the "'review' was based on a very 'old version of [the GOLO] site,' and that much of the

information contained therein was consequently incorrect," though GOLO does not say whether

the review was inaccurate when it was posted, or simply became inaccurate due to subsequent

changes to GOLO's website.  *Id.* ¶ 76 (quoting *id.* Ex. B).  Defendants eventually removed the

portions of the review at issue, after GOLO's repeated complaints.  *Id.* ¶ 82.

Second, GOLO complains about various negative comments and reviews that were

posted by third-party users below the GOLO reviews on both the HighYa and BrightReviews

websites.  *See, e.g.*, *id.* ¶¶ 69-70, 86 (citing *id.* Exhibits A and C).  As Exhibit A indicates, there

were a number of positive user reviews posted as well.  *See, e.g.*, *id.* Ex. A at 5-8 (user reviews

describing the program as the "Best program!," "My new way of life," "GREAT PLAN, 10

pounds off in 11 days," and "Excellent Program").

Third, GOLO complains about a review posted on the BrightReviews website in January

2017.  *Id.* ¶ 85; *id.* Ex. C.  Although GOLO asserts that "the BrightReviews GOLO 'review' was

replete with inaccuracies, misleading statements, and blatant falsehoods," *id.* ¶ 87, it identifies just three statements from the lengthy article that it asserts were inaccurate:

- "The 2010 study [was] performed with diabetics, not otherwise healthy individuals looking [to] optimize insulin  . . . [T]his seems to be their target market";

- "None of [GOLO's] studies appear to be peer reviewed for accuracy . . .";

- "[W]e didn't encounter any clinical evidence on leading medical websites . . . that directly linked insulin management . . . and weight loss."

*Id.* ¶ 88.  In its original Complaint, GOLO did not identify what was supposedly inaccurate about any of these three statements.  *See generally* Compl. ¶¶ 79-84, June 16, 2017, Dkt. 1.  GOLO has now attempted to cure that defect, pleading in its Amended Complaint: "In truth, the 2010 study was performed on *non*-diabetics as well; diabetics are *not* GOLO's 'target market'; many studies of the ingredients in GOLO's Release supplement have been peer reviewed; *and* there is significant clinical evidence linking insulin management and weight loss."  Am. Compl. ¶ 89.

GOLO's Amended Complaint follows its original Complaint, however, in omitting, for each of the statements it challenges, both the statement's context and critical portions of its text. For instance, the first two challenged statements appear in a section of the review that describes the information provided on GOLO's website about scientific testing of its weight loss program, and does not purport to do anything more than interpret the information available on the website. *Id.* Ex. C at 4.  The full text of the passage from which GOLO took those two snippets makes this clear (with the bolded text indicating what was omitted from the Amended Complaint):

> **While these [GOLO studies] certainly seem positive, we think there are a couple of important points to quickly outline.**
>
> **First, we're not told in any of these study summaries exactly how GOLO helped address participants' insulin optimization, so we can't know if this aspect is what resulted in their weight loss.**

> **Second,** the 2010 study **appears to have been** performed with diabetics, not otherwise
> healthy individuals looking to optimize insulin.  **And based on the claims made on
> their website** this seems to be their target market.

> **Finally,** none of these studies **were indicated to have been** peer reviewed for accuracy
> **and we're told very little about the controls used or what (if any) data was excluded**.

*Id.*  As for the third statement GOLO complains about, read in full context, it simply states that

Defendants were unable to locate studies on leading medical websites linking "insulin

management" – as opposed to "insulin resistance" – to weight loss:

> **With this important distinction [between "insulin resistance" and "insulin
> management"] in mind,** we didn't encounter any clinical evidence on leading medical
> websites **like the National Institutes of Health** that directly linked insulin management
> **(or "optimization" as frequently referenced by GOLO)** and weight loss.

*Id.* Ex. C at 2 (portions omitted from the Complaint in bold).  The BrightReviews review is no

longer on the BrightReviews website.  *Id.* ¶ 91.

### C.     GOLO's Allegations About Defendants' Business Practices

The Amended Complaint contains a number of allegations about Defendants' business

practices, each of which is made "on information and belief."  *See* Am. Compl. ¶¶ 56, 92-99.

First, the Amended Complaint incudes an entire section (which was not in the original

Complaint) that identifies and describes what GOLO characterizes broadly as "The Fake

'Review' Business."  *Id.* ¶¶ 56-67.  GOLO begins this section by alleging that "neither HighYa

nor BrightReviews is actually an independent, authoritative review website.  To the contrary,

they are both shams; fake 'review' websites by which their owners and operators promote

products, receive advertising revenue, and generate income through website hits, clicks, and/or

traffic."  *Id.* ¶ 56.  GOLO does not plead any specific facts in support of that broad accusation,

and the remaining allegations in that section describe in general terms the conduct GOLO

attributes to so-called "fake 'review' websites," without any specific allegations as to

Defendants.  *See id.* ¶¶ 57-67.

Second, GOLO makes a number of allegations concerning Defendants' alleged use of the GOLO name to increase web traffic to their reviews of GOLO. *See id.* ¶¶ 92-101.  In particular, GOLO alleges that Defendants have employed various search-engine-optimization techniques, or "SEOs," "to redirect GOLO's potential and existing customers to their respective websites." *Id.* ¶ 92.  Most centrally, GOLO accuses Defendants of purchasing advertisements through "Google's AdWords Program, or similar Bing and/or Yahoo programs" that employ the "GOLO" name, alleging that this has resulted in the URL addresses for Defendants' reviews of GOLO appearing "on the first page of search results" for the term "GOLO." *Id.* ¶¶ 92-94.[2] GOLO further alleges that these tactics have diverted "potential and existing GOLO customers" to Defendants' websites, where those customers are then redirected to products and services that those websites review more favorably than GOLO's products and services.  Am. Compl. ¶ 95. GOLO's Amended Complaint does not identify any of these products or services that Defendants have supposedly reviewed more favorably than they have reviewed GOLO.  Nor does it identify any customer who was actually diverted from GOLO to one of those – allegedly more favorably reviewed – products or services.

Finally, GOLO alleges that Defendants' conduct (i) has "caused thousands of potential GOLO customers not to visit GOLO's website or purchase GOLO's products," (ii) has "caused

---

[2] GOLO's Amended Complaint does not provide a much of an explanation of what Google's AdWords program is or how it operates.  As one court has explained, Google AdWords "is a program through which the search engine sells 'keywords,' or search terms that trigger the display of a sponsor's advertisement.  When a user enters a keyword, Google displays the links generated by its own algorithm in the main part of the page, along with the advertisements in a separate 'sponsored links' section next to or above the objective results." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1143 (9th Cir. 2011).  Thus, the specific allegation is that Defendants have purchased "GOLO" as a key word, which has caused Defendants' reviews to come up as sponsored links in internet searches for the term "GOLO." Defendants deny that they are using, or have ever used, Google AdWords (or any other similar program), but will accept this allegation as true purely for purposes of this motion.

existing GOLO customers to cancel or not continue to purchase GOLO's products," and (iii) has "caused GOLO to expend significant resources and money on corrective advertising and other means of lessening the impact of Defendants' conduct." *Id.* ¶¶ 98-100.  GOLO does not provide any specific facts to support those broad contentions, but speculates that it will be able to do so after "discovery." *Id.* ¶¶ 98-99.

Based on these allegations, GOLO asserts four claims against Defendants.  First, GOLO asserts a claim for false advertising under the Lanham Act (Count I), based on what it alleges are Defendants' "incorrect and misleading 'reviews' concerning the GOLO program." *Id.* ¶¶ 102-111.  Second, GOLO asserts what appears to be a claim for trademark infringement under the Lanham Act (Count II), based on Defendants' alleged use of "GOLO's mark . . . to promote and attract consumers to their websites . . . ." *Id.* ¶¶ 112-119.  Third, GOLO asserts a claim for trade libel under Pennsylvania common law (Count III), based on the publication of allegedly "false and defamatory" statements regarding its products and services. *Id.* ¶¶ 120-127.  And, finally, GOLO asserts a claim for unfair competition under Pennsylvania common law (Count IV), based on the same conduct underlying the two Lanham Act claims. *Id.* ¶¶ 128-133.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to avoid dismissal. *Iqbal*, 556 U.S. at 678; *see also id.* at 678-79 (federal pleading standards do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").  Rather, a plaintiff must plead sufficient "factual content" to permit "the court to draw the *reasonable inference* that the defendant is

9

liable for the misconduct alleged."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 556) (emphasis added).

## ARGUMENT

**I.     GOLO'S LANHAM ACT CLAIMS (COUNTS I AND II) FAIL AS A MATTER OF LAW FOR MULTIPLE REASONS**

Counts I and II of the Amended Complaint are brought under Section 43(a) of the Lanham Act.  Count I asserts a claim for "false advertising" under 15 U.S.C. § 1125(a)(1)(B).  This Count principally challenges Defendants' reviews of GOLO, which GOLO asserts contain "false and misleading statements about GOLO's product" that "are or were material, in that they are or were likely to influence customers' purchasing decisions."  Am. Compl. ¶¶ 106-107.  Although Count II is likewise labelled a "false advertising" claim, it appears to have been brought under 15 U.S.C. § 1125(a)(1)(A), which creates a cause of action for "false association" or trademark infringement.  *See, e.g.*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1384 (2014) (explaining that "Section 1125(a) . . . creates two distinct bases of liability: false associations, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)").  That is because Count II arises out of Defendants' alleged use of "GOLO's mark in various advertisements and other SEOs to promote and attract consumers to their websites."  Am Compl. ¶ 116.

GOLO's attempt to transform the Lanham Act into a weapon against consumer reviews it does not like fails for at least four reasons.  First, Defendants' reviews are not commercial speech, and the Lanham Act may not be used as a tool for suppressing *non*-commercial speech.  Second, GOLO has not adequately alleged any injuries directly flowing from Defendants' alleged Lanham Act violations.  Third, as to the false advertising claim in particular, GOLO has not adequately alleged that Defendants published anything false about its products or services.

And, fourth, as to the trademark claim in particular, GOLO has not adequately alleged that Defendants' use of the GOLO mark is likely to cause consumer confusion.

### A.    Commercial Speech

Even assuming, just for these purposes, *both* that Defendants published "false and misleading" reviews about GOLO, *and* that Defendants exploited GOLO's name to make those reviews appear prominently in internet searches, that conduct would nevertheless fall outside the scope of the Lanham Act.  That is because "[t]he Lanham Act regulates only *commercial* speech." *Valley Forge Military Acad. Found. v. Valley Forge Old Guard, Inc.*, 24 F. Supp. 3d 451, 456 (E.D. Pa. 2014) (emphasis added).  As the D.C. Circuit has observed, "[e]very circuit court of appeals to address the scope of" Section 1125(a)'s two causes of action "has held that they apply only to commercial speech." *Farah v. Esquire Magazine*, 736 F.3d 528, 541 (D.C. Cir. 2013) (citing cases); *see also Cronin v. Bergmann*, 2014 WL 5285930, at *2 (E.D. Pa. Oct. 16, 2014) (noting that a false advertising claim under Section 1125(a)(1)(B) requires, *inter alia*, "commercial speech . . . by a defendant who is in commercial competition with the plaintiff").  Without that crucial limitation, companies would have impunity to use the Lanham Act – as GOLO is attempting to do here – to challenge as "false advertising" any criticism of their products or services, even when unconnected to commercial competition, or to police any use of their trademarks in commentary about their products or services.[3]

---

[3] *See, e.g.*, *Radiance Found., Inc. v. NAACP*, 786 F.3d 316, 325 (4th Cir. 2015) ("Trademark protections exist neither to allow companies to protect themselves from criticism nor to permit them to 'control language.'" (citation omitted)); *Wojnarowicz v. Am. Family Ass'n*, 745 F. Supp. 130, 142 (S.D.N.Y. 1990) (explaining that legislative history of Lanham Act specifically insured that a "Consumer Report which reviews and may disparage the quality . . . of products, [and] misrepresentations made by interested groups which may arguably disparage a company and its products" would be far outside reach of Lanham Act) (quoting S. 1883, 101st Cong., 1st Sess., 135 Cong. Rec. 1207, 1217 (1989)).

Courts consider "three factors . . . in deciding whether speech is commercial: (1) is the speech in an advertisement; (2) does the speech refer to a specific product or service; and (3) does the speaker have an economic motivation for the speech." *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1017 (3d Cir. 2008) (citation omitted). As the Third Circuit has explained, ultimately, inquiry into whether speech should be characterized as commercial or non-commercial pivots on the "commonsense distinction between speech proposing a commercial transaction . . . and other varieties of speech." *Id.* (quoting *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 792 (3d Cir. 1999)).

Here, GOLO does not challenge any statements contained in, or any use of its mark in connection with, the advertisements that appear on the pages hosting Defendants' reviews. Rather, GOLO's Lanham Act claims are directed solely at the *non*-commercial statements contained in the reviews themselves, as well as Defendants' use of GOLO's name in connection with those reviews. While GOLO does assert that the reviews themselves "constitute, or did constitute, false advertising and promotion," Compl. ¶ 108, that is a legal conclusion that need not be credited at this stage.[4] GOLO has not identified a single statement in Defendants' reviews of GOLO that even remotely proposes a commercial transaction, or otherwise promotes or markets *Defendants'* products or services (of which there are none).

---

[4] The Complaint also asserts, in the context of GOLO's trademark claim, that Defendants are "using GOLO's mark in various advertisements . . . ." Compl. ¶ 116. This is misleading. As explained above, *see supra*, at pp.8 n.2, GOLO is not alleging that Defendants display advertisements that deploy GOLO's mark. Rather, the allegation is that Defendants have used GOLO's mark in connection with the Google AdWords program or related programs, which causes Defendants' reviews of GOLO, *which are clearly identified as reviews of GOLO*, to come up as sponsored links in internet searches. Because the reviews of GOLO consists solely of speech that is non-commercial, any use of GOLO's mark in connection with those reviews cannot serve as a basis of liability.

Concededly, Defendants' websites are commercial enterprises, and their reviews are intended to attract readers, which, in turn, can increase Defendants' advertising revenue. *See, e.g.*, Am. Compl. ¶¶ 45, 54. The same can be said of product reviews published in *The New York Times* or *Wired* or *Consumer Reports*, which likewise offer criticisms about the products being reviewed, while also freely employing the brand names associated with those products. Speech is not rendered commercial in the sense relevant to this inquiry just because it is published as part of a for-profit enterprise.

The Eleventh Circuit's recent decision in *Tobinick v. Novella*, 848 F.3d 935 (11th Cir. 2017) is instructive in this regard. There, the Court held that defendant's blog posts, which criticized plaintiff's medical practice, were not commercial speech for purposes of plaintiff's Lanham Act claim. *Id.* at 952. In doing so, the Court rejected the argument that the blog posts were commercial speech because the defendant made a profit from selling advertisements on his blog, explaining as follows: "Even if [defendant] receives some profit . . ., the articles themselves, which never propose a commercial transaction, are not commercial speech simply because extraneous advertisements and links for membership may generate revenue." *Id.* The Court further observed that "magazines and newspapers often have commercial purposes, but those purposes do not covert the individual articles within these editorial sources into commercial speech subject to Lanham Act liability." *Id.*; *see also Farah*, 736 F.3d at 541 (satirical blog post published on website of *Esquire Magazine* was not commercial speech, even though website is a commercial venture that includes advertisements); *Keel v. Axelrod*, 148 F. Supp. 3d 411, 423 (E.D. Pa. 2015) ("writing a book for profit is not sufficient to render" passage in book allegedly taking credit for rival political consultant's strategy "commercial speech" for purposes of Lanham Act claim); *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1118 (C.D.

13

Cal. 2004) (defendant's efforts to "gather[] publicly-available information about various software products and then disclose[] that information to the general public" were not commercial speech, and to hold otherwise would mean that "every statement by one entity concerning another's product that is alleged to be false would be the subject of a Lanham Act claim").

GOLO tries to get around the fact that Defendants' reviews are unconnected to the sale of any product or service by pleading that, "[o]n information and belief, neither HighYa nor BrightReviews is actually an independent, authoritative review website.  To the contrary, they are both shams: fake 'review' websites by which their owners and operators promote products . . . ." Am. Compl. ¶ 56.  This kind of allegation is insufficient.  It is axiomatic that a complaint cannot withstand a Rule 12(b)(6) motion based on the "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  Rather, the complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  GOLO has not done that here, and accordingly, its Lanham Act claims fail as a matter of law because they are directed at non-commercial speech.

## B.      Direct Commercial Injury

GOLO's Lanham Act claims fail as a matter of law for an additional, independent reason – GOLO has not adequately pleaded a direct commercial injury.  In *Lexmark*, the Supreme Court held that a Lanham Act plaintiff must plead and prove "economic or reputational injury flowing *directly from* the deception wrought by the defendant's advertising," which occurs "when deception of consumers causes them to withhold trade from the plaintiff."  134 S. Ct. at 1391

(emphasis added).[5]  As the Supreme Court explained, this requirement ensures that the scope of Lanham Act liability does not balloon beyond what Congress intended, as it limits application of the statute to circumstances in which the "harm" the plaintiff has alleged bears "a sufficiently close connection to the conduct the statute prohibits."  *Lexmark*, 134 S. Ct. at 1388-90.  As the Supreme Court further explained, in circumstances such as here, where the "plaintiff . . . does not compete with the defendant," it will be especially difficult to establish the requisite "proximate causation."  *Id.* at 1392.  That is because the absence of a zero-sum relationship between the parties means that commercial harm to the plaintiff cannot be inferred merely on the basis of commercial benefit to the defendant.

In *Lexmark*, the Supreme Court ultimately concluded that the plaintiff had sufficiently alleged a direct commercial injury under the standard the court was articulating because the plaintiff identified a reasonably specific loss in sales – "10,000" units – and plausibly connected that loss to the defendant's alleged "false advertising."  *Id.* at 1394.  Applying *Lexmark*, courts have held that the Lanham Act requires a plaintiff to plead both a specific, identifiable commercial injury and facts sufficient to plausibly connect that injury to the alleged violations of the statute.  Thus, for instance, in *Wall & Associates, Inc. v. Better Business Bureau of Central Virginia, Inc.*, 685 F. App'x 277 (4th Cir. 2017), the Fourth Circuit affirmed dismissal of a Lanham Act claim that was likewise brought against a consumer-review publication where the plaintiff did "not identify a single consumer who withheld or canceled business with it or pointed to a particular quantum of diverted sales or loss of goodwill and reputation resulting directly from reliance on any false or misleading representations by [d]efendants."  *Id.* at 279.  The Court

---

[5] Subsequent cases have made clear that, while *Lexmark* involved a false advertising claim under Section 1125(a)(1)(B) of the Lanham Act, the requirements that decision lays out apply equally to trademark claims under Section 1125(a)(1)(A).  *See, e.g.*, *UHS of Delaware, Inc. v. United Health Servs., Inc.*, 227 F. Supp. 3d 381, 403 (M.D. Pa. 2016) (citing cases).

explained that, in "the absence of such fact allegations," the plaintiff "did not adequately allege the necessary proximate cause between its alleged injury and [d]efendants' allegedly violative conduct." *Id.* Other courts have applied *Lexmark* to dismiss Lanham Act claims under similar circumstances. *See, e.g.*, *Black Diamond Land Mgmt. LLC v. Twin Pines Coal Inc.*, --- Fed. App'x ----, 2017 WL 3635178, at *3 (11th Cir. Aug. 24, 2017) (affirming dismissal of Lanham Act claim where plaintiff alleged that it "'will continue to be damaged by [d]efendants' false statements,'" but did not "provide any factual support for how or why such an injury to a commercial interest has or will occur"); *Reese v. Pook & Pook, LLC*, 158 F. Supp. 3d 271, 287-88 (E.D. Pa. 2016) (dismissing Lanham Act false advertising claim arising out of article about plaintiff where plaintiff alleged "no direct injury arising from the publication of the Article against which the Lanham Act was designed to protect").[6]

In this case, GOLO has simply alleged, in general terms, that it "has been and will continue to be injured as a result of Defendants'" alleged Lanham Act violations. Am. Compl. ¶¶ 109, 117. It has not identified a single customer who withheld business as a consequence of Defendants' statements or use of its trademark. Nor has it identified a single competitor to which it supposedly lost business as a result of Defendants' conduct. Nor has it alleged any specific facts linking a general downturn in its business to the timing of Defendants' statements or use of its mark.

---

[6] *See also, e.g.*, *Plan P2 Promotions, LLC v. Wright Bros., Inc.*, 2017 WL 1838943, at *5 (S.D. Cal. May 8, 2017) (dismissing Lanham Act claim where complaint included no "specific allegations of, at the very least, lost sales or damage to [plaintiff's] reputation"); *Avalos v. IAC/Interactivecorp.*, 2014 WL 5493242, at *5 (S.D.N.Y. Oct. 30, 2014) (dismissing Lanham Act false advertising claim where "[t]he Complaint . . . provide[d] no factual support for . . . conclusory allegation of harm to [plaintiff]."); *Ahmed v. Hosting.com*, 28 F. Supp. 3d 82, 91 (D. Mass. 2014) (dismissing Lanham Act claim where complaint "state[d] no facts establishing . . . commercial injury caused by the alleged [trademark] infringement").

After Defendants pointed out this failure to plead a direct injury in their motion to dismiss, *see* Mem. in Supp. of Defs.' Mot. to Dismiss at 14-16, Aug. 14, 2017, Dkt. 12-1, GOLO amended its complaint to include facts purporting to explain that failure.  Thus, GOLO's Amended Complaint now states that "Defendants' 'reviews' of GOLO and/or use of SEOs related to GOLO have caused thousands of potential GOLO customers not to visit GOLO's website or purchase GOLO's products.  The exact number and identities of those customers can be determined through the Google analytics for Defendants' websites and other discovery regarding the IP addresses of the visitors to Defendants' websites."  Am. Compl. ¶ 98; *see also id.* ¶ 99 (similar allegation as to lost customers).  This reference to what discovery *might* show is insufficient.  *Lexmark* sets forth what is unmistakably a *pleading* requirement, stating that "[t]o invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations."  *Lexmark*, 134 S. Ct. at 1395.  Under *Iqbal* and *Twombly*, a plaintiff is not permitted to do what GOLO is asking to do here – use barebones pleading as a gateway to discovery in order to determine whether it might have a claim.  Rather, a plaintiff is required to plead, in the first instance, sufficient "factual content" to permit "the court to draw the reasonable inference" that the requirements for establishing the cause of action will be met.  *Iqbal*, 556 U.S. at 678.  Only then are the "doors of discovery" "unlock[ed]."  *Id.* at 678-79.

Because GOLO has not pleaded a direct commercial injury, its Lanham Act claims should be dismissed for that reason as well.

### C.      Falsity

GOLO's false advertising claim under Section 1125(a)(1)(B) fails for an additional

reason – GOLO has not adequately alleged falsity.  To state a claim for false advertising under

the Lanham Act, a plaintiff must allege, *inter alia*, "that the defendant has made false or

misleading statements" as to its own products or the products of others.  *Ditri v. Coldwell Banker*

*Residential Affiliates, Inc.*, 954 F.2d 869, 872 (3d Cir. 1992) (citation omitted).  Here, while

GOLO has alleged generally that Defendants' made "false and misleading statements about

GOLO's product" in its reviews, Am. Compl. ¶ 106, it only identifies three specific statements

that are alleged to be false, each from the BrightReviews review, *see id.* ¶ 88.[7]  As set forth

below, none of those statements can support a Lanham Act claim, even if the prerequisites were

otherwise met.

To adequately plead falsity, a Lanham Act "plaintiff must assert facts to show that the

challenged statement is either literally false, or true but misleading."  *Checker CAB Phila., Inc. v.*

*Uber Techs., Inc.*, 2016 WL 950934, at *6 (E.D. Pa. Mar. 7, 2016) (citing *Ditri*, 954 F.2d at

872)).  Here, GOLO appears to be asserting literal falsity, at least insofar as the Amendment

Complaint contains no allegations of actual consumers being deceived, which is a prerequisite

for a claim based on statements alleged to be literally true, but misleading.  *Id.* at *7.  "[W]hen

determining the truth or falsity of an alleged misrepresentation, a court must look at the

statement in its context."  *Id.* (citing *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-*

---

[7] GOLO also alleges that the HighYa review falsely identified "combatting 'insulin
resistance'" as "the focus of GOLO's program," whereas, according to GOLO, its focus is on
"insulin maintenance," not "insulin resistance."  Am. Compl. ¶ 77.  Defendants' *opinions* about
how to characterize the focus of the GOLO program cannot, as a matter of law, give rise to
liability under the Lanham Act.  *See, e.g.*, *Robert Bosch LLC v. Pylon Mfg. Corp.*, 632 F. Supp.
2d 362, 366 (D. Del. 2009) ("Only statements of fact capable of being proven false are
actionable under the Lanham Act . . . ." (citation omitted)).

*Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994)).  In addition, "[o]nly an

*unambiguous* message can be literally false."  *Id.* (quoting *Novartis Consumer Health, Inc. v.*

*Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 587 (3d Cir. 2002)).  Under

these standards, none of the statements GOLO challenges is actionably false.  That is apparent

once the statements are read in full and in their proper context, as opposed to in the truncated

form offered in the Amended Complaint.  *See supra*, at 6-7.

 First, GOLO's contention that Defendants falsely stated (1) that its "2010 study" was

performed "with diabetics" only, and (2) that diabetics "seem[] to be their target market," Am.

Compl. ¶¶ 87-88, is not a fair reading of what was actually published.  Even accepting as true for

these purposes GOLO's assertion that the "2010 study was performed on *non*-diabetics as well,"

*id.* ¶ 89, Defendants' statement was about the information provided on GOLO's website about

the study, not the study itself.  *See id.* Ex. C at 4("[T]he 2010 study *appears to have been*

performed with diabetics, not otherwise healthy individuals looking to optimize insulin."

(emphasis added)).  GOLO does not allege that Defendants made any false statements about the

content on GOLO's website.  In addition, the statement "this seems to be their target market,"

which GOLO contends erroneously suggested that diabetics are the target market for GOLO's

diet, *id.* ¶ 89, plainly refers to the "otherwise healthy individuals looking to optimize insulin"

who are also mentioned in the statement.  *Id.* Ex. C at 4.  In its introductory section, the review

states very clearly that, "[a]ccording to the company, their diet plan is perfect *for anyone trying*

*to lose weight and improve their health*."  *Id.* Ex. C at 1 (emphasis added).  Thus, no reasonable

reader could take from the review the conclusion that the GOLO diet is aimed specifically at

diabetics.[8]  Certainly, the review contains no *unambiguous* statement to that effect, which, as noted above, is a requisite for a finding of literal falsity.

Second, GOLO's accusation that Defendants falsely stated that "[n]one of [GOLO's] studies appears to be peer reviewed for accuracy" is likewise inaccurate.  Once again, what Defendants actually published concerned the information contained on GOLO's website about the studies supposedly vouching for the effectiveness of GOLO's supplement – namely, that "none of these studies were indicated to have been peer reviewed for accuracy and we're told very little about the controls used or what (if any) data was excluded."  *Id.* Ex. C at 4.  GOLO does not dispute the accuracy of that description of the information found on its website.  Moreover, even if the statement *did* refer to the absence of any peer-reviewed studies vouching for the supplement – as opposed to the absence of evidence of such studies on the GOLO website – GOLO has not refuted that statement.  All GOLO has said is that the underlying "ingredients" in the supplement "have been peer reviewed," *id.* ¶ 89, not that they have been peer reviewed in the specific combination in which they occur in GOLO's supplement, which is the relevant factual contention.

Finally, GOLO's contention that Defendants' statement that they "didn't encounter any clinical evidence on leading medical websites . . . directly link[ing] insulin management . . . and weight loss" is false because "there is significant clinical evidence linking insulin management

---

[8] It is for this Court to decide, as a matter of law, whether the statements at issue are reasonably capable of the meaning that GOLO has ascribed to them.  *See, e.g., XYZ Two Way Radio Service, Inc. v. Uber Technologies, Inc.*, 214 F.Supp.3d 179, 186 (E.D.N.Y. 2016) (granting Rule 12(b)(6) motion and dismissing Lanham Act false advertising claim, concluding that "nothing in the [advertisement's] statements suggests the meaning" alleged by plaintiffs); *Design Resources, Inc. v. Leather Industries of America*, 789 F.3d 495, 503 (4th Cir. 2015) (dismissing Lanham Act false advertising claim, and holding that in order for plaintiff's claims to make it past the pleading stage, "one [would have] to be willing to accept that the ad means the opposite of what it says, an interpretation we find unsupportable").

and weight loss," *id.* ¶¶ 88-89, likewise fails. Defendants' actual statement, which GOLO does

not refute, was that "we didn't encounter any clinical evidence *on leading medical websites like*

*the National Institutes of Health* that directly linked insulin management . . . and weight loss."

*Id.* Ex. C at 2 (emphasis added). Moreover, read in its full context, the point Defendants were

making was that, while there is plenty of clinical evidence linking "insulin resistance" to weight

gain, the same is not true of the link GOLO posits between "insulin maintenance" and weight

loss. *See id.* Ex. C at 1-2 (discussing distinction between "insulin resistance" and "insulin

maintenance"). While GOLO may disagree with that characterization of the medical literature,

that disagreement is not the proper subject of a Lanham Act lawsuit. *See, e.g.*, *ONY, Inc. v.*

*Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 497-98 (2d Cir. 2013) (disagreements over

scientific matters should not be resolved by courts via Lanham Act lawsuits).

In short, the false advertising claim fails on the independent ground that GOLO has not

adequately pleaded falsity.

### D.      Consumer Confusion

Finally, GOLO's claim arising out of Defendants' alleged use of GOLO's mark fails as

matter of law for an additional reason – GOLO has not pleaded facts to indicate any likelihood of

consumer confusion flowing from Defendants' alleged use of its mark. "To state a claim

pursuant to 15 U.S.C. § 1125(a) of the Lanham Act, a plaintiff must allege," *inter alia*, "that the

defendant uses a false designation or origin," and "that such false designation is *likely to cause*

*confusion*, mistake or deception as to the origin, sponsorship or approval of the plaintiff's goods

and services by another person . . . ." *Parker v. Google, Inc.*, 242 F. App'x 833, 838 (3d Cir.

2007) (citing *AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1428 (3d Cir.

1994)).

This consumer confusion requirement serves an important limiting function, and is an additional reason why any claim against Defendants for the use of GOLO's name in connection with their reviews must fail.  Contrary to what GOLO suggests, trademark law does not give it a blanket right to prevent others from using its mark.  Rather, trademark law only gives it a right to prevent others from using its mark in a manner *likely to engender consumer confusion*.  As Judge Posner has explained: "A trademark is not a property right, but an identifier; so, provided no one is likely to be confused by the alleged infringer, there is no impairment of the interest that the trademark statute protects."  *Libman Co. v. Vining Indus., Inc.*, 69 F.3d 1360, 1361 (7th Cir. 1995) (Posner, J.,); *see also Facenda*, 542 F.3d at 1018 ("the Lanham Act customarily avoids violating the First Amendment, in part by enforcing a trademark only when consumers are likely to be misled or confused by the alleged infringer's use.").

Here, there is no possible basis for consumer confusion.  The whole point of GOLO's Complaint is that Defendants are publishing *negative* information about GOLO.  *See, e.g.*, Am. Compl. ¶¶ 63, 70, 73-77, 82, 86-88.  Indeed, one of GOLO's accusations regarding Defendants' websites is that they hold themselves out – falsely, according to GOLO – as "independent, authoritative review website[s]."  *Id.* ¶ 56.  That accusation is inconsistent with *any* suggestion that Defendants are attempting to freeride off of the value of GOLO's name by tricking consumers into thinking their websites are affiliated with GOLO.  Accordingly, GOLO cannot possibly plead, and has not even tried to plead, that Defendants' use of its name is likely to cause consumers who were originally looking for the GOLO website to be confused as to whether Defendants' websites are affiliated with GOLO.  This, in fact, is the ground on which courts have consistently rejected these types of lawsuits, in which plaintiffs attempt to challenge negative online commentary about them as violative of their trademarks.  *See, e.g.*, *Parker v.*

22

*Google, Inc.*, 422 F. Supp. 2d 492, 502 (E.D. Pa. 2006) (dismissing Lanham Act claim challenging use of plaintiff's name for website about plaintiff, and noting that "it is difficult to accept the possibility that someone would believe that [plaintiff] himself created a website that refers to him so negatively").[9]  As the Fourth Circuit has explained, permitting Lanham Act claims to proceed under these circumstances, "risks creating the paradox that criticism equals confusion, thereby permitting companies to shield themselves from adverse assessments." *Radiance Found., Inc.*, 786 F.3d at 328.

Importantly, this same logic applies even where, as in this case, a plaintiff accuses a defendant of utilizing search-engine-optimization techniques to take advantage of the plaintiff's organic web traffic.  For instance, in *J.G. Wentworth v. Settlement Funding LLC*, 2007 WL 30115 (E.D. Pa. Jan. 4, 2007), the plaintiff, who operated a structured settlement company, sued a competitor under the Lanham Act based on the allegation that his competitor was using plaintiff's trademarked name in conjunction with various search-engine-optimization techniques so as to "ensure[] that a link to defendant's website will appear immediately proximate to a link

---

[9] *See also, e.g.*, *Radiance Found., Inc.*, 786 F.3d at 328 (directing dismissal of Lanham Act claims based on theory that use of organization's name in critical websites was diverting web traffic from the organization, and noting that "it is not immediately apparent how someone would confuse an article which is strongly critical of an organization with the organization itself"); *Baker v. DeShong*, 90 F. Supp. 3d 659, 663 (N.D. Tex. 2014) (dismissing Lanham Act claim directed at website critical of plaintiff's business practices on ground that "[n]o reasonable person would take one look at [defendant's] website and believe that [plaintiff] authorized its content"); *SaleHoo Grp., Ltd. v. ABC Co.*, 722 F. Supp. 2d 1210, 1217-18 (W.D. Wash. 2010) (quashing subpoena seeking to unmask owner of "gripe site" about plaintiff's business in order to pursue trademark claim, and noting that "it is not evident that the content of the website is likely to cause confusion"); *Cintas Corp. v. Unite Here*, 601 F. Supp. 2d 571, 579-80 (S.D.N.Y. 2009) (dismissing trademark claim directed against website providing criticism of plaintiff's business practices on ground that "[t]he likelihood of confusion among consumers visiting" the two "websites is implausible"); *MCW, Inc. v. BadBusinessBureu.com, LLC*, 2004 WL 833595, at *16 (N.D. Tex. Apr. 19, 2004) (dismissing Lanham Act claim against website offering consumer complaint forum on the ground that "this court fails to understand how any reasonable viewer of the defendants' website would believe that the disparaging comments regarding [plaintiff's] business are endorsed by [plaintiff]").

to defendant's website when individuals conduct internet searches for" plaintiff's name.  *Id.* at

*1.  The Court granted the defendant's motion to dismiss on likelihood of confusion grounds,

even though – *unlike* in this case – the defendant accused of diverting the plaintiff's internet

traffic was actually selling a rival product or service at its website.  *Id.* at *8.  The Court

explained its reasons for its decision as follows:

> At no point are potential consumers 'taken by a search engine' to
> defendant's website due to defendant's use of plaintiff's marks in meta
> tags.  Rather, . . . a link to defendant's website appears on the search
> results page as one of many choices for the potential consumer to
> investigate. . . .  [T]he links to defendant's website always appear as
> independent and distinct links on the search results pages regardless of
> whether they are generated through Google's AdWords program or
> search of the keyword meta tags of defendant's website.  Further,
> plaintiff does not allege that defendant's advertisements and links
> incorporate plaintiff's marks in any way discernable to internet users
> and potential customers. . . .  Because no reasonable factfinder could
> find a likelihood of confusion under the set of facts alleged by plaintiff,
> I will grant defendant's motion to dismiss.

*Id.* at *7-8; *see also Tempur-Pedic N. Am., LLC v. Mattress Firm, Inc.*, 2017 WL 2957912, at *7

(S.D. Tex. July 11, 2017) ("Courts have consistently rejected the notion that buying or creating

internet search terms, alone, is enough to raise a claim of trademark infringement.").  In other

words, a defendant's use of search-engine-optimization techniques cannot convert conduct that,

by its very nature, is not likely to cause consumer confusion into a Lanham Act violation.  *See,*

*e.g.*, *Ascentive, LLC v. Opinion Corp.*, 842 F. Supp. 2d 450, 468 (E.D.N.Y. 2011) ("While it may

be – and likely is – the case that [defendant's] SEO practices are intended to make its webpages

seem more relevant to search engines than they actually are and these methods may indeed

violate the search engines' terms of service, the remedy for this conduct is not trademark law but

instead with the search engines themselves.").[10]  Thus, GOLO's claim arising from Defendants'
alleged use of its mark fails on this ground as well.

## II.     GOLO'S COMMON LAW UNFAIR COMPETITION CLAIM (COUNT IV) FAILS AS A MATTER OF LAW FOR THE SAME REASONS AS ITS LANHAM ACT CLAIMS FAIL

GOLO's common law claim for unfair competition fails as a matter of law as well.  As
one Court in this District has explained, "[a] Pennsylvania common law cause for unfair
competition is identical to the Lanham Act, without the federal requirement of interstate
commerce."  *R.J. Ants, Inc. v. Marinelli Enters., LLC*, 771 F. Supp. 2d 475, 489 (E.D. Pa. 2011);
*see also Checker CAB*, 2016 WL 950934, at *4 n.4 (noting that, according to "an abundant line
of cases from this circuit, an unfair competition claim under Pennsylvania common law is the
equivalent of a federal Lanham Act claim") (citing cases).  Thus, GOLO's unfair competition
claim fails for the same reason that its Lanham Act claims fail.

## III.    GOLO'S COMMON LAW TRADE LIBEL CLAIM (COUNT III) FAILS AS A MATTER OF LAW FOR MULTIPLE REASONS

Finally, GOLO's trade libel claim likewise fails as a matter of law.  Though it is not clear
which particular statements GOLO is challenging, none of the publications or statements
described in the Amended Complaint can give rise to a viable trade libel claim.

### A.      The HighYa Review

To the extent that GOLO is challenging any of the statements contained in the HighYa
GOLO review discussed in Paragraphs 68-84 of the Amended Complaint, such a claim is barred

---

[10] There is one case from this District, *Amerigas Propane, L.P. v. Opinion Corp.*, 2012
WL 2327788, at *8 (E.D. Pa. June 19, 2012), in which the Court did permit the plaintiff to
withstand a motion to dismiss on a legal theory similar to the one being presented here, albeit
while observing that "Plaintiff may face a tall task in demonstrating that Defendant's use of its
mark is confusing . . . ."  Respectfully, that decision is inconsistent not only with *Wentworth*,
which is likewise from this District, but also with both the broad weight of authority nationally
on this issue and the plausibility-based pleading standard set out in *Iqbal* and *Twombly*.

by Pennsylvania's one-year statute of limitations for trade libel claims.  *See Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 246-48 (Pa. 2002) (citing 42 Pa. Cons. Stat. § 5523(1)); *Kappe Assocs., Inc. v. Chesapeake Envtl. Equip., LLC*, 2016 WL 1257665, at *12 (E.D. Pa. Mar. 31, 2016) (same).  GOLO concedes on the face of its Amended Complaint that the HighYa review was published in "March 2016," Am. Compl. ¶ 68, well over a year before the filing of this action on June 16, 2017.  And, while GOLO complains that "HighYa's GOLO 'review' [was] posted to its website for a year," *id.* ¶ 83, that is immaterial.  Under Pennsylvania's "single publication" rule, 42 Pa. Cons. Stat. § 8341(b), the date of first publication, including the date that content is first uploaded to a website, is the operative date for statute of limitations purposes.  *See In re Phila. Newspapers, LLC*, 690 F.3d 161, 174-75 (3d Cir. 2012) (Pennsylvania's single publication rule means that, for internet publications, the claim must be brought within one year of original publication of challenged material online).  Accordingly, any claim arising out of the HighYa GOLO review is untimely.[11]

## B.    The User Comments

To the extent that GOLO is challenging the user comments discussed in Paragraphs 69-70, 86 of the Amended Complaint, such a claim is barred by Section 230 of the federal Communications Decency Act, 47 U.S.C. § 230(c)(1).  Section 230 provides, in relevant part, that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," and that "no cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."  *Id.* § 230(c)(1), (e)(3).  The statute therefore bars any attempt

---

[11] Separately, any trade libel claim arising out of the HighYa review would be subject to dismissal for failure to adequately plead falsity, actual malice or pecuniary harm, as discussed below with respect to the BrightReviews review.

to hold Defendants liable for the content posted on their websites by the websites' users.  *See, e.g.*, *Dimeo v. Max*, 433 F. Supp. 2d 523, 531 (E.D. Pa. 2006) (dismissing defamation claims against website operator where statements complained of were authored by third-party users).  Nor can GOLO sidestep this bar by alleging that Defendants occasionally monitor, edit, or remove user-generated content.  Am. Compl. ¶¶ 35-41, 51-52.  As the Third Circuit has explained, Section 230 precludes holding the owner and/or operator of a website liable "for its exercise of a publisher's traditional editorial functions" with regard to user-generated content, including the "monitoring, screening, and deletion of [such] content . . . ."  *Green v. America Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003) (quoting *Zeran v. American Online, Inc.*, 129 F.3d 327, 330, 332-33 (4th Cir. 1997)).  Thus, any claim with respect to the user comments is barred by Section 230.

## C.     The BrightReviews Review

Finally, to the extent that GOLO is challenging the BrightReviews review discussed in Paragraphs 85-91 of the Amended Complaint, it has failed to adequately plead the essential elements of a trade libel claim.  To prevail on a claim for trade libel under Pennsylvania law, a plaintiff must plead and ultimately prove: (1) a "false" statement; (2) that "the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss"; (3) that "pecuniary loss does result"; and (4) that "the publisher either kn[ew] that the statement is false or act[ed] in reckless disregard of its truth or falsity (actual malice)."  *Brooks Power Sys., Inc. v. Ziff Commc'ns, Inc.*, 1994 WL 444725, at *2 (E.D. Pa. Aug. 17, 1994).  GOLO has failed to adequately plead three out of four of those elements.

27

### 1.      Falsity

First, GOLO has not alleged a "false" statement.  As set forth above with reference to the false advertising claim, GOLO has not adequately pleaded falsity as to any of the three statements from the BrightReviews review that it challenges.  *See supra*, at 17-20.  That is a basis for dismissing GOLO's trade libel claim as well.  *See, e.g.*, *Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*, 5 F. Supp. 2d 238, 243-44 (D. Del. 1998) (dismissing false advertising claim and defamation claim on the same ground).

### 2.      Actual Malice

Second, even if GOLO had adequately pleaded falsity, it has not adequately pleaded that Defendants had the requisite state of mind with respect to that falsity – that they published the allegedly false statements while either knowing they were false or strongly suspecting that they were false (*i.e.*, with actual malice).  Under the pleading rules established in *Iqbal* and *Twombly*, "merely alleging actual malice is insufficient; courts are not bound to accept as true legal conclusions couched as factual allegations."  *Reese*, 158 F. Supp. 3d at 289; *see also Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56 (1st Cir. 2012) (to survive a motion to dismiss where actual malice is an element of the claim a plaintiff must plead more than "actual-malice buzzwords").  Rather, "adequately pleading actual malice is an onerous task," which requires a plaintiff to "show that the existence of actual malice is plausible on its face."  *Earley v. Gatehouse Media Pennsylvania Holdings, Inc.*, 2015 WL 1163787, at *2 (M.D. Pa. Mar. 13, 2015) (internal marks and citation omitted).

Here, GOLO has pleaded no facts that, if proven, could plausibly support its conclusory assertion that "Defendants knew that the statements concerning GOLO were totally false or, if not, Defendants' avoidance of the truth was in utter and reckless disregard of their truth or

falsity."  Am. Compl. ¶ 123.  The closest GOLO comes to pleading any theory of actual malice is

in its general allegation that so-called "fake 'review' websites" "do not perform any of the

analysis typical of a genuine consumer review publication."  *Id.* ¶ 59.  Even if this *were* an

allegation properly directed at Defendants, or their conduct with regard to the GOLO reviews in

particular, *which it is not*, it is black-letter law that "failure to investigate, standing alone, does

not constitute actual malice."  *Tucker v. Fischbein*, 237 F.3d 275, 286 (3d Cir. 2001).  Indeed,

"even an *extreme departure* from professional standards, without more, will not support a

finding of actual malice."  *Id.* (emphasis added).

Nor does the Amended Complaint fare any better with its suggestion that "fake 'review'

websites" have economic incentives to negatively review their competitors' products.  Am.

Compl. ¶ 63.  Once again, this allegation has nothing to do either with Defendants or their

conduct with respect to the challenged GOLO reviews.  And, even if it did, the law is clear that a

plaintiff cannot plead actual malice simply by alleging falsity combined with a supposed

economic motivation to distort the truth.  The plaintiff must plead additional facts plausibly

connecting that alleged economic motivation to the publisher's pre-publication knowledge, or

strong suspicion, that what was published was false.  As the Supreme Court has explained, the

mere fact that allegedly false and defamatory material was published "in order to increase []

profits" does not "suffice to prove actual malice."  *Harte-Hanks Commc'ns, Inc. v.

Connaughton*, 491 U.S. 657, 667 (1989); *see also Taha v. Bucks Cty.*, 2015 WL 9489586, at *5

(E.D. Pa. Dec. 30, 2015) (allegations that websites that posted allegedly erroneous arrest

information "'were a scheme by [d]efendants' aimed at maximizing profits and 'they don't care

who gets hurt,'" even if accepted as true, did "not suffice to prove actual malice").  Thus, "the

mere presence of some ulterior motive – whether a profit motive, a motive to produce the most

29

interesting stories, or a personal desire to harm the subject of a story – is not enough to support a finding of actual malice." *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 596 (D.C. Cir. 2016).

Because GOLO has pleaded nothing to plausibly suggest that Defendants published the statements about it with actual malice, its trade libel claim fails.

### 3.    Pecuniary Loss

Finally, GOLO has failed to adequately plead pecuniary loss.  Under Pennsylvania law, pleading this element requires pleading "actual pecuniary loss arising from the publication," *Reese*, 158 F. Supp. 3d at 289, as opposed simply to pleading diffuse "damage to . . . reputation." *Mallory v. S&S Publishers*, 168 F. Supp. 3d 760, 775 (E.D. Pa. 2016).  That means that GOLO is required to allege, at a minimum:

> facts showing an established business, the amount of sales for a substantial period preceding publication, and amount of sales subsequent to the publication, facts showing that such loss in sale were the natural and probable result of such publication, and the facts showing the plaintiff could not allege the name of particular customers who withdrew or withheld their custom.

*Brunson Commc'ns, Inc. v. Arbitron, Inc.*, 266 F. Supp. 2d 377, 382 (E.D. Pa. 2003) (quoting *Forum Publ'ns, Inc. v. P.T. Publishers, Inc.*, 700 F. Supp. 236, 244 (E.D. Pa. 1988)); *see also Swift Bros. v. Swift & Sons, Inc.*, 921 F. Supp. 267, 276 (E.D. Pa. 1995) (plaintiff asserting commercial disparagement claim "must in his complaint set out the names of his lost customers and show by figures how much he has lost financially'" (quoting *Testing Sys., Inc. v. Magnaflux Corp.*, 251 F. Supp. 290 (E.D. Pa. 1966)).  This requirement to plead pecuniary loss with specificity follows directly from the nature of the tort, which "protects economic interests by providing a remedy to one who suffers pecuniary loss from slurs affecting the marketability of goods." *Zerpol Corp. v. DMP Corp.*, 561 F. Supp. 404, 408-09 (E.D. Pa. 1983) (explaining origin of "near impossible burden of proving special damages").

30

Here, GOLO has not alleged any specific economic damages.  Instead, it has simply alleged that Defendants' statements "have severely injured GOLO, in that they have tended to blacken and besmirch GOLO's reputation," and that it has suffered injury to its "professional reputation."  Am. Compl. ¶¶ 124, 127; *see also id.* ¶¶ 97-101 (alleging economic harm in purely general terms).  This is insufficient.  *See, e.g.*, *Mallory*, 168 F. Supp. 3d at 775 (dismissing business disparagement claim where plaintiff "ha[d] not plausibly pled economic loss, but rather focuse[d] on damage to her reputation"); *Blank v. Optimum Fin. Servs., LLC*, 2017 WL 1508990, at *4 (E.D. Pa. Apr. 27, 2017) (dismissing claim for disparagement of title, which has the same elements as a claim for trade libel, where "[p]laintiff does not allege, with any specificity, that he suffered special damages as a result of Defendant'[s] actions").  Thus, GOLO's trade libel claim fails on this ground as well.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice pursuant to Rule 12(b)(6).

Dated:  September 25, 2017

Respectfully submitted,

LEVINE SULLIVAN KOCH & SCHULZ, LLP


By:   ___/s/ Paul Safier_____
      Paul Safier (No. 209154)

1760 Market Street, Suite 1001
Philadelphia, PA 19103
Tel: (215) 988-9778
Fax: (215) 988-9750
Email: psafier@lskslaw.com

*Attorneys for Defendants HighYa, LLC and*
*BrightReviews, LLC*

31