# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GOLO, LLC, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | Civil Action |
| | : | No. 17-2714 |
| HIGHYA, LLC; and BRIGHTREVIEWS, LLC, | : | |
| | : | |
|     Defendants. | : | |

**McHUGH, J.**                                                                                                                    **MAY 4, 2018**

## MEMORANDUM

      This case demonstrates one of the challenges presented by new forms of online commerce—specifically, how to apply the Lanham Act to companies that generate income through websites that review the products of others, without selling any products of their own. Plaintiff GOLO, Inc. owns and operates a weight loss dieting program that can be purchased through its website. Defendants HighYa, LLC, and BrightReviews, LLC, are review websites that purportedly assist consumers in making a choice by evaluating the claims that companies like GOLO make about their products. Although Defendant HighYa has a marketing affiliation with a limited number of suppliers, both Defendants' principal source of revenue comes from ads posted by others on their website. Plaintiff contested the fairness and accuracy of Defendants' online reviews of its product, and Defendants then removed the review from one site and revised it on the other. Plaintiff nonetheless brings this action seeking recovery for injuries it allegedly sustained during the period the reviews were posted and unrevised. Plaintiff is proceeding under the Lanham Act and state law, arguing unfair competition and trade libel. Defendants now move to dismiss. Because I conclude that Defendants were not engaged in commercial speech in

1

publishing the reviews, Plaintiff has failed to state a claim for unfair competition as a matter of law. Plaintiff's trade libel claim also fails because it lacks at least one essential element. Accordingly, this matter will be dismissed, without prejudice.

I. **Relevant Facts**

Defendants, HighYa, LLC, and BrightReviews, LLC, are two Washington state-based companies that operate consumer review websites with the purported aim of "trying to help you cut through all the marketing hype by gathering information from a wide variety of sources, bringing it together . . . and answering the ever-present question: Is this a scam, or is it legit?" Am. Compl. ¶ 29, ECF No. 14. Each offers two kinds of reviews of consumer products and services: editorial reviews, which are authored by Defendants, and reviews submitted by third-party commenters who have purportedly used the products and services at issue, and posted reviews underneath the editorial reviews. Defendants' websites allow third parties to comment on all reviews, and to provide a rating of the product from which Defendants present an "Average Customer Rating" ranging from 1 to 5 stars.

Neither Defendant sells any products or services via their website, and both assert that they are independent and unbiased, with BrightReviews expressing that it is "unaffiliated with any company or brand" and Highya—at the time the reviews at issue were published—expressing a similar position while disclosing an advertising affiliation with BowFlex Max Trainer for transparency.[1] Instead, Defendants disclose that they derive most (for HighYa) or all (for BrightReviews) of their revenue from web traffic, specifically advertisement units provided by

---

[1] That list now includes Casper Mattress, Casper Wave Mattress, Casper Pillow, and InvenTel's HD Mirror Cam. *See Advertiser Disclosure*, HighYa Reviews, https://www.highya.com/advertiser-disclosure (last visited Apr. 24, 2018). HighYa explains that its affiliations only result in direct compensation if a user arrives at the affiliate's web page for that product through a link on the HighYa review page belonging to that product. *See id.*

Google AdSense and Media.net. *Id.* ¶ 45.[2]

Defendants further disclose on their websites that their authored reviews principally rely on "publicly available information," and not necessarily Defendants' own use or testing. For third-party reviews, Defendants provide guidelines and benchmarks for what constitutes a good review, which include encouraging "truthful accounts based on factual information" while "[p]roviding a personal experience / [t]elling your story," and prohibiting "exaggeration, or 'stretching the truth,' and self-promotion"—that is, companies seeking to artificially boost their rating on the website(s) by posing as consumers. *Id.* ¶¶ 33–34. Defendants retain the right to remove a review if they conclude that posters have not complied with these guidelines. *Id.* ¶¶ 35–40. Additionally, companies may sign up for a business profile, through which they are alerted to posts about their product(s) and can reply to negative reviews as the official verified company. *Id.* ¶ 40.

That was the course initially taken here, as Plaintiff, GOLO, LLC, participated in Defendants' business profile program and took issue with two editorial reviews about its weight loss and wellness program, which it considered negative. The GOLO program includes a meal plan and a "Release Supplement," in addition to a booklet and "other behavioral tools." *Id.* ¶ 3. Plaintiff sells the program through its website and customer service department exclusively, using a combination of television, radio, print and digital marketing. Consequently, a subset of Plaintiff's customers arrive at its website and purchase its product after performing internet searches and reading reviews of Plaintiff's product online. Relevant to the analysis here, Plaintiff's website contained a description of its program, backed by references to research purportedly supporting the merits of the program. Defendants published editorial reviews

---

[2] These programs place advertisements next to content on websites based on numerous factors, and compensate the owners of those websites based on the relevant pay scheme arrangement, *i.e.*, per user clicks on the advertisements.

primarily, if not exclusively, critiquing the statements in that description, as it appeared on Plaintiff's website. *See* Pl.'s Exs. A, C, ECF No. 14 (at ECF page numbers 26–47, and 52–60).

According to the Amended Complaint, Defendant HighYa published its editorial review article in March 2016, which spurred dozens of comments from purported users of the GOLO program. The average customer rating was 2.8 out of 5 stars. The link to that article was posted across different social media platforms, one of which contained the statement: "Weight-loss #scams are everywhere. Is GOLO one of them?"[3] In July 2016, representatives from GOLO began corresponding with those from HighYa requesting that the alleged "incorrect, false, and misleading information" in the review be remedied. *See* Pl.'s Ex. B, ECF No. 14 (at ECF page numbers 48–51). Plaintiff takes issue with three such pieces of information: arguing that (i) the title, "GOLO Weight Loss Diet Reviews – Is it a Scam or Legit?" was misleading, and should instead have been "GOLO Weight Loss Diet Reviews – Does it really work?"; (ii) much of the information in the review was incorrect because it was based on an outdated version of the GOLO program site; and (iii) the focus of the GOLO program was not simply combatting "insulin resistance," as the review states. *Id.* ¶¶ 72, 75, 77. The alleged false, misleading, and offending portions of the review were eventually removed from HighYa's website and social media platforms. But Plaintiff complains of injuries arising from the one-year period that the unrevised version remained on HighYa's website.

The BrightReview article was not published until January 2017. That article appeared in a form similar to the HighYa review, with an editorial review at the top of the page, and user comments at the bottom. The average customer rating presented there was 2 out of 5 stars, with

---

[3] The link has since been removed. Defendant HighYa apparently concedes that it would have been the party responsible for the specific wording of the link. By way of context, however, the term "scam" was not uniquely attached to GOLO. As noted above, Defendants' websites purport to globally address the question: "Is this a scam, or is it legit?"

three purported users giving what Plaintiff considers "highly negative 'reviews,'" one of which claimed that using GOLO resulted in 30 pounds of weight gain and a 25 point increase in his blood sugar level. *Id.* ¶ 86. Plaintiff alleges that the editorial review authored by Defendant BrightReviews (as distinguished from third-party product users) was also "replete with inaccuracies, misleading statements, and blatant falsehoods." *Id.* ¶ 87. As an example, Plaintiff alleges that the following are false statements:

- "The 2010 study [was] performed with diabetics, not otherwise healthy individuals looking [sic] optimize insulin . . . [T]his seems to be their target market;
- None of [GOLO's] studies appear to be peer reviewed for accuracy . . . ; and
- [W]e didn't encounter any clinical evidence on leading medical websites . . . that directly linked insulin management . . . and weight loss."

*Id.* ¶ 88 (citations omitted). Plaintiff contends that those were false statements because "in truth, the 2010 study was performed on non-diabetics also; diabetics are not Plaintiff's target market; many studies of the ingredients in [their supplement] have been peer reviewed; and there is significant clinical evidence linking insulin management and weight loss." *Id.* ¶ 89. Plaintiff acknowledges that Defendant BrightReviews ultimately took down this review on or about June 7, 2017, but contends that, in the interim, both Defendants' websites reaped the benefits of the alleged "sham review" business model. Specifically, Plaintiff contends that Defendants' websites represent a new brand of websites that are "designed to appear trustworthy, [and to] resemble internet versions of more traditional consumer review publications." Am. Compl. ¶ 58. But in reality, they are websites owned by or secretly related to the competitors of the products Defendants review. *Id.* ¶¶ 59–60.

5

Plaintiff asserts a claim for false advertising under the Lanham Act, what appears to be a trademark infringement claim under the Lanham Act, and state law claims for trade libel and unfair competition. Defendants move to dismiss all claims, arguing that Plaintiffs have failed to raise a cognizable claim under relevant federal and state unfair competition laws.

## II. Standard

Under Rule 12(b)(6), a plaintiff is required to plead factual allegations sufficient "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "mere possibility of misconduct" is not enough to survive such a motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Nor are speculative and conclusory statements, for while all allegations contained in the complaint must be accepted as true, I need not give credence to mere "legal conclusions" couched as facts. *Id.* at 678. Furthermore, in making a determination as to whether the pleadings meet the above threshold, I may properly consider "documents which are attached to or submitted with the complaint, as well as . . . documents whose contents are alleged in the complaint and whose authenticity no party questions." *Pryor v. Nat'l Coll. Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

## III. Discussion

### A. Plaintiff fails to state a Lanham Act claim, as well as a Pennsylvania Unfair Competition claim.

Section 1125(a)(1) of the Lanham Act provides a federal avenue for two types of unfair competition claims: false advertising under § 1125(a)(1)(B) and false association or trademark infringement under § 1125(a)(1)(A). *See, e.g.*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1384 (2014). Plaintiff asserts claims under both provisions in Counts I and

6

II of the Amended Complaint.[4]  Defendants present four lines of arguments in support of their contention that both claims should be dismissed: (1) their reviews are not commercial speech, (2) Plaintiff has not adequately alleged any commercial injuries directly flowing from Defendants' alleged violations, (3) as it pertains to Plaintiff's false advertising claims, Plaintiff has not adequately alleged that Defendants published anything false about Plaintiff's products or services, and (4), as it pertains to Plaintiff's false association claim, Plaintiff has not adequately alleged that Defendants' use of Plaintiff's name in the title of their reviews is likely to cause consumer confusion.  The initial two lines of argument—referring to commercial speech and direct commercial injury—are threshold requirements for bringing a Lanham Act claim, and likewise an Unfair Competition claim under Pennsylvania law.[5]  As a result, my analysis begins and ends with my finding that Defendants' reviews do not qualify as commercial speech and are thus beyond the realm of Lanham Act liability.

As a threshold matter, "every circuit court of appeals to address the scope of [Lanham Act claims for false advertising and false association] has held that they apply only to commercial speech." *Farah v. Esquire Magazine*, 736 F.3d 528, 541 (D.C. Cir. 2013).  To determine whether speech is commercial, the Third Circuit requires courts to assess whether the speech (i) is an advertisement, (ii) refers to a specific product or service, and (iii) whether the speaker has an economic motivation for the speech.  *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1017 (3d Cir. 2008).  Although "[a]n affirmative answer to all three questions provides strong support for the

---

[4] Whereas Count I expressly cites § 1125(a)(1)(B), Count II, which has virtually the same title, makes no reference to the statute.  But based on the factual allegations referenced, Defendants conclude that Plaintiff is advancing a § 1125(a)(1)(A) false association claim.  Plaintiff has not disputed that interpretation, and I will proceed accordingly.

[5] The Pennsylvania common law cause of action for unfair competition is identical to claims under the Lanham Act, *sans* the federal interstate commerce requirement.  *See, e.g.*, *R.J. Ants, Inc. v. Marinelli Enters., LLC*, 771 F. Supp. 2d 475, 489 (E.D. Pa. 2011).

7

conclusion that the speech is commercial," the Third Circuit has cautioned that the inquiry involves making "a commonsense distinction between speech proposing a commercial transaction . . . and other varieties of speech." *Id.* (citing *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 933 (3d Cir.1990)) (internal quotations omitted).

Here, Defendants' editorial reviews certainly refer to GOLO's dieting program, satisfying the second factor. The question then is whether those reviews satisfy the often interrelated first and third factors, which speak to the overarching issue of whether this truly is commercial speech as that term has been construed in connection with the Lanham Act. On their face, the reviews do not promote any competing product, and do not explicitly propose a commercial transaction. They simply offer an analysis of Plaintiff GOLO's product, and in doing so, do not go so far as to make any specific recommendations to consumers.

The Eleventh Circuit's decision in *Tobinick v. Novella*, 848 F.3d 935 (11th Cir. 2017) is instructive. Plaintiff there was a physician who had developed an unorthodox use for a generic drug that he claimed was effective at treating spinal pain, post-stroke neurological dysfunctions, and Alzheimer's disease, but that had not been approved by the Food and Drug Administration. The defendant was a Yale-affiliated neurologist who posted several articles on his website critiquing the plaintiff's clinic. Like Defendants' sites here, the web pages on which the articles were posted generated revenue through advertisements and membership subscription. The Eleventh Circuit concluded that the articles did not constitute commercial speech even though the website generated income. *Id.* at 950. The reviews did not propose any commercial transaction, and the defendant who posted them gained no direct economic benefit from readers of the reviews' decision about whether to become a patient of the plaintiff thereafter. The content of the reviews had no direct bearing on the revenue generated by traffic to the site: "To be sure, neither

the placement of the articles next to revenue-generating advertising nor the ability of a reader to pay for a website subscription would be sufficient in this case to show a liability-causing economic motivation for [defendant's] informative articles." *Id.* at 951–52. The *Tobinick* court emphasized that the articles communicated information, expressed opinion, and recited grievances, and that the content of the articles was consistent with their stated purpose of "providing an objective analysis of questionable or controversial medical claims so that consumers can make more informed decisions." *Id.* at 950. The court ultimately characterized the articles as "informative," and as "add[ing] to the public debate regarding the viability of a non-FDA approved." *Id.*

That line of reasoning is persuasive here, where I find that the heart of Plaintiff's grievance is with the content of the reviews. Beginning with the article posted on HighYa's website, Plaintiff's concerns that the article assessed an outdated version of the website, that the title could be less suggestive, and that it does not accurately report the focus of the program stems from Plaintiff's larger concern that HighYa's methodology lacked rigor. For example, whereas the initial article predicated its description, assessment, and critiques of Plaintiff's program on Plaintiff's website alone, the current version, which Plaintiff did not take issue with in its Amended Complaint, reflects that HighYa went a step further and interviewed a representative from Defendant. *See GOLO Customer Reviews*, HighYa, https://www.highya.com/golo-reviews (last visited Apr. 26, 2018) ("We had the opportunity to speak with the company and learn more about their approach to weight loss, all aimed at helping you find answers to your most important questions and overall [sic] capture their vision for their customers").

The same is true of Plaintiff's grievances with the article posted by BrightReviews. Though Plaintiff insists the reviews are "replete with inaccuracies, misleading statements, and

9

blatant falsehoods," Defendants couch the statements therein with qualifying language, primarily deriving their opinions from statements on Plaintiff's website. The value of such a review to consumers may be limited, but on its face the review certainly does not propose any form of commercial transaction nor does it embody the typical characteristics of an advertisement. As in *Tobinick*, the goal of the reviews is that " consumers can make more informed decisions. " 848 F.3d at 950.[6]

Plaintiff counters that Defendants' reviews are nonetheless commercial speech because they are meant to affect the readers' purchasing decisions—that is, to encourage readers to buy certain products, steer clear of others, and click on surrounding advertisements and related links, with some of those "clicks" financially benefitting the Defendants. But I am persuaded by the Eleventh Circuit's analysis in *Tobinick* that such financial benefit is merely incidental to the content of the reviews.

Plaintiff is correct that liability can arise under the Lanham Act if websites purporting to offer reviews are in reality stealth operations intended to disparage a competitor's product while posing as a neutral third party. *See, e.g.*, *Cannella v. Brennan*, 2014 WL 3855331 (E.D. Pa. 2014) (finding commercial speech where plaintiff and defendants were direct competitors, and defendants conspired to create an anonymous website, titled "truthaboutcannella.com," consisting of disparaging comments about plaintiff); *NTP Marble, Inc. v. AAA Hellenic Marble, Inc.*, 2012 WL 607975 (E.D. Pa. 2012) (finding commercial speech where plaintiff and defendant were direct competitors in the marble and granite installation business, and defendant attempted to anonymously post numerous negative reviews about Plaintiff on several websites);

---

[6] How well the Defendants accomplish that goal is open to question. Defendants might have failed to collect information from "a wide variety of sources" as represented on their site, but that does trigger application of the Lanham Act. In *Tobinick*, the underlying research was also minimal, in that the defendant physician's critique was based his solely on a description of plaintiff's medical clinics provided by an article in the *Los Angeles Times*. 848 F.3d at 940.

*CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*, 2016 WL 5118530, at *5–8 (S.D. Cal. 2016) (finding commercial speech where a research study by a nonprofit corporation contained false and disparaging information about a self-directed exercise program, because the defendant non-profit had a financial motive to protect its market for certifying personal trainers); *Mimedx Grp., Inc. v. Osiris Therapeutics, Inc.*, 2017 WL 3129799, at *6–7 (S.D.N.Y. 2017) (finding commercial speech where defendant issued a press release mispresenting findings of a third-party study comparing its product to that of its competitor).

The question then becomes whether Plaintiff has plausibly pleaded that Defendants' review sites are shams that disguise an underlying financial scheme that Defendants are pursuing to Plaintiff's detriment. The initial Complaint barely made such an allegation. The Amended Complaint, filed in response to a motion to dismiss, makes a weak attempt to assert such a claim.[7] District courts should apply the plausibility standard with care, because in the absence of discovery, a plaintiff's ability to confirm what might be well-founded suspicion is limited. But on the record here, I conclude that Plaintiff's conclusory allegations do not suffice for three reasons.

First, even though this Motion is pending under Rule 12, I find it proper to consider the content of the sites in placing Plaintiff's allegations in proper perspective, given that Plaintiff relies upon postings from Defendants' websites. *See Pryor*, 288 F.3d at 560. It is clear from Defendants' websites that, following Plaintiff's objections to the reviews, Defendants responded and amended them, specifically advising readers that changes to the reviews were based on further information provided by GOLO. Such conduct does not plausibly support an inference

---

[7] *Compare* Compl. ¶ 49 (alleging that HighYa's business profiles are "merely *a ploy to create dialogue* with the companies whose products are reviewed, as well as a false perception that [its] reviews are legitimate or scientific") (emphasis added) *with* Am. Compl. ¶¶ 43, 56–66 (presenting a series of generalized allegations to imply that Defendants operate a fake review business).

11

that the purpose of the reviews is to create an advantage for competing products.[8] Second, Defendants disclose on their sites a commercial relationship with the Bowflex Max Trainer, a fitness product, and other commercial affiliations. Plaintiff cites the Bowflex relationship to suggest that Defendants' sites exist as a marketing tool for competing products (a theory addressed below), but such disclosure otherwise undercuts Plaintiff's surmise that Defendants are engaged in some form of covert competition. Why disclose such a relationship at all if Defendants' goal is covert competition? Finally, inasmuch as Plaintiff itself pleads that Defendants' revenues are a product of web traffic, the nature of a review would seem to be irrelevant. A favorable review would presumably drive as much traffic as an unfavorable one, and in the case of the former, the merchant being endorsed would almost certainly refer prospective purchasers to the website commending its product, thereby further increasing traffic.

Nor am I persuaded that Defendant HighYa's affiliation with BowFlex Max Trainer renders this a situation in which "one competitor directly injures another by making false statements about his own goods or the competitor's goods and thus inducing customers to switch," which would be actionable under the Lanham Act. *See Lexmark Int'l, Inc.*, 134 S. Ct. at 1393 (citation and brackets omitted). The review discussing GOLO's dieting program does not at all reference, or provide a direct link to any exercise equipment, let alone to Bowflex. The only place Defendant HighYa mentions its affiliation with BowFlex is on an entirely separate page where, for transparency purposes, it discloses all of its affiliations. Against that backdrop, Defendants persuasively argue that one would be hard-pressed to find that a consumer interested in Plaintiff's dieting program, who stumbles upon HighYa's review of that category of product,

---

[8] Plaintiff's separate allegation, based "[o]n information and belief," that Defendants' reviews "*may* also . . . be designed to foster payment from companies whose products are reviewed negatively," Pl.'s Resp. Br. 9 n.4, ECF No. 18 (emphasis added), is also undercut by the fact that the review was revised without any such demand for payment.

12

would, without any prompting from the review itself, be led to purchase exercise equipment on an entirely separate, unconnected page on HighYa's website. And even if that were the case, contrary to Plaintiff's suggestion, it does not immediately follow that exercise equipment like the BowFlex Max Trainer and a dieting program like GOLO are competing products, especially since, as Defendants point out, the GOLO program "is specifically designed to work in tandem with, rather than in lieu of, an exercise regimen." Defs.' Resp. Br. 4, n.2, ECF No. 19 (citing Am. Compl. ¶¶ 10–13).

To be clear, direct commercial competition is not an absolute requirement of a Lanham Act claim, *Lexmark Int'l, Inc.,* 134 S. Ct. at 1392. And as there has been no discovery, I make these observations only as part of a "common sense" evaluation of the plausibility of Plaintiff's conclusory allegation that Defendants' websites are not what they purport to be. *Iqbal*, 556 U.S. at 679.

In the final analysis, I conclude that Defendants' reviews of Plaintiff's product do not qualify as commercial speech, with the result that Plaintiff's Lanham Act claims and state law unfair competition claim must be dismissed.

### B. Plaintiff also fails to state a claim for trade libel under Pennsylvania law.

A claim for trade libel under Pennsylvania law requires a plaintiff to plead (1) a false statement, (2) that the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that the publication will result in pecuniary loss, (3) that there is actually pecuniary loss, and (4) actual malice—that is, that the publisher either knew that the statement was false or acted in reckless disregard of its truth or falsity. *Brooks Power Sys., Inc. v. Ziff Commc'ns, Inc.*, 1994 WL 444725, at *2 (E.D. Pa. 1994) (citing *Menefee v. Columbia Broad. Sys., Inc.*, 458 Pa. 46, 54 (1974)).

13

Critically, Pennsylvania has a one-year statute of limitations for trade libel claims, running from the date of the first publication, whether that be an upload to a website or otherwise. *See Phila. Newspapers, LLC*, 690 F.3d 161, 174–75 (3d Cir. 2012). Defendants argue that Plaintiff's trade libel claims as to the HighYa review are time-barred under that statute, based on Plaintiff's allegations that HighYa's initial review was posted in "March 2016," when this case was filed on June 16, 2017, and that the review was "posted to [HighYa's] website for a year." *See* Am. Compl. ¶¶ 68, 83. Plaintiff concedes that it filed this case more than a year after the original publication, yet argues that the case is not time-barred because the revised version of the article was published within the limitations period, and, alternatively, HighYa re-published the unrevised review when it posted links to it through its social media accounts. Those arguments are without merit. The only HighYa social media post referenced dates back more than a year before this case was filed. And as the defense points out, despite making passing references to it, Plaintiff at no point took issue with any portion of the revised version of the article. Thus, as to Defendant HighYa, Plaintiff's trade libel claims pertaining to the HighYa review will be dismissed as time-barred.[9]

As to BrightReviews, Defendants argue that Plaintiff has failed to adequately plead that the statements made in their review were false, that they were made with actual malice, or that the statements in the reviews resulted in a pecuniary loss. I need not reach the issues of pecuniary loss and actual malice because I conclude that Plaintiff has not adequately pled falsity. I reach that conclusion because each of the statements GOLO takes issue with are prefaced with language

---

[9] The parties argue at length about whether the user comments provide a basis for Plaintiff's trade libel claim, with Plaintiff contending it need only plead that that Defendant HighYa was the true source of those comments "on information and belief." Preliminarily, I note that Plaintiff has not identified any specific comment that can be analyzed as false, leading to pecuniary loss, or made with actual malice. Beyond that, in the specific context of this case, based upon the implausibility of Plaintiff's conclusory allegations that the websites are shams, I am not inclined to give weight to Plaintiff's equally conclusory allegations that the third-party reviewers and commenters do not exist.

indicating that they are observations based primarily on GOLO's website. *See* Amend. Compl. ¶ 88 ("'The 2010 study [was] performed with diabetics, not otherwise healthy individuals looking to optimize insulin . . . [T]his *seems* to be their target market; . . . None of [GOLO's] studies *appear* to be peer reviewed for accuracy . . . ; . . . and *[W]e didn't encounter* any clinical evidence on leading medical websites . . . that directly linked insulin management . . . and weight loss.'") (emphasis added). Plaintiff's contest the ultimate accuracy of these statements, but fail to address whether those observations could reasonably and fairly been made based upon the information posted on its website at the time. *See id.* ¶ 89.

In the alternative, Plaintiff argues that Defendants' reviews also created a false impression that Plaintiff's product was a scam, citing low the average user rating; Defendant HighYa's Twitter post, which stated, "Weight-loss #scams are everywhere. Is GOLO one of them?"; the initial title of the article, "GOLO Weight Loss Diet Reviews – Is it a Scam or Legit?"; and the fact that the reviews would appear prominently in web searches for GOLO. *See* Pl.'s Sur-Reply 5, ECF No. 21. But when read in the context of the article, which is attached as an exhibit to the Amended Complaint, I am not persuaded that the impression conveyed is that Plaintiff's program is a scam in the illegal, fraudulent sense, as compared to communicating that the product might not produce its intended result. That is pivotal where, as here, the product concerns weight loss, because, whether a weight loss product or program produces that result is the essential question. *See* Am. Compl. 75 (stating that the review should have been titled "GOLO Weight Loss Diet Reviews – Does it really work?"). Thus, pleading that BrightReviews posed the question and allowed users to weigh in would not suffice to support a claim proceeding

on a false impression theory. Because that is the extent of the pleadings here, I will also dismiss Plaintiff's Pennsylvania trade libel claims as to Defendant BrightReviews.[10]

**IV.     Conclusion**

In sum, Plaintiff having failed to adequately allege that Defendants' reviews qualify as commercial speech and thus failed to state a claim for false advertisement or trademark infringement, and Plaintiff also having failed to state a claim as trade libel under state law, I will grant Defendants' Motion to Dismiss in its entirety.

/s/ Gerald Austin McHugh
United States District Judge

---

[10] Although I do not reach the issue of malice, the carefully worded nature of the statements in the reviews certainly weighs against the sufficiency of the malice allegations in the Amended Complaint.